JUDGE BAER

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

EAGLE STAR INSURANCE COMPANY LIMITED
and HOME AND OVERSEAS INSURANCE
COMPANY LIMITED.

$\qquad$ Petitioners,

vs.

ARROWOOD INDEMNITY COMPANY.
f/k/a ROYAL INDEMNITY COMPANY,

$\qquad$ Respondent.

------------------------------------------------------------x

**13 CIV 3410**

Civil Action No.

**FILED UNDER SEAL**

## PETITION FOR AN ORDER CONFIRMING "FINAL AWARD" <u>AND ENTRY OF JUDGMENT</u>

Eagle Star Insurance Company Limited and Home and Overseas Insurance Limited (collectively "Eagle Star") respectfully petition this Court for an order. pursuant to 9 U.S.C. § 9 and § 207. confirming the "Final Award" issued on November 9. 2012 by a panel in an arbitration proceeding between Eagle Star and Respondent Arrowood Indemnity Company ("Arrowood"). Eagle Star further requests that the Court. pursuant to 9 U.S.C. § 13. enter a judgment in accordance with the confirmed award and retain jurisdiction for the purposes of any further proceedings to enforce such award.

### <u>The Parties</u>

1.      Eagle Star Insurance Company Limited and Home and Overseas Insurance Limited are both corporations organized and existing under the laws of the United Kingdom with their principal places of business in the United Kingdom.

2.      Arrowood is organized and existing under the laws of the State of Delaware with its principal place of business in Charlotte. North Carolina.

1

## Jurisdiction and Venue

3.   This Court has jurisdiction pursuant to 9 U.S.C. § 203 because the arbitration award for which confirmation is sought falls under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. § 201 et seq.

4.   This Court also has jurisdiction pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interests and costs.

5.   Venue lies in this district under 9 U.S.C. § 9 and § 204 because the arbitration award for which confirmation is sought was issued in this district and the arbitration agreement under which the award was made designated New York, NY as the place of arbitration. Venue is also proper under 28 U.S.C. § 1391 because the matter arises from an arbitration conducted and an award issued in this district.

## Basis of and Claim for Relief

6.   Eagle Star and Arrowood are parties to certain reinsurance contracts effective 1/1/1967-12/31/1967 (the "Reinsurance Contracts").[1]

7.   Irreconcilable disputes arose between Eagle Star and Arrowood under the Reinsurance Contracts.

8.   On June 24, 2011, Eagle Star demanded arbitration against Arrowood under the Reinsurance Contracts seeking a determination of whether Arrowood had properly ceded claims related to its insureds General Motors Corporation, Anco Insulations Inc. and Graybar Electric Company, Inc. (See Exhibit "4").

---

[1] (See Exhibits "1," "2" and "3") (respectively, the Blanket First Excess of Loss Cover, the Contingency First Excess of Loss Cover, and the Contingency Second Excess of Loss Cover).

9.       On July 21, 2011, Arrowood demanded separate arbitrations against Eagle Star under the Reinsurance Contracts, seeking payment for each of the aforementioned claims in a separate proceeding.(See Exhibit "5")

10.       Thereafter, the parties agreed to consolidate all arbitrations under the Reinsurance Contracts in a single proceeding.

11.       After the arbitration panel was duly constituted, both Arrowood and Eagle Star submitted motions for summary adjudication.

12.       On October 17, 2012, the arbitration panel held an evidentiary hearing in this district, at which time the panel received documentary evidence and heard oral argument by counsel.



14.       The "Final Award" finally resolved the issues before the arbitration panel.

15.       The "Final Award" was sent to the parties on November 9, 2012.

16.       This Petition to confirm is brought within one year after the "Final Award" was rendered.

17.       Eagle Star has not made a prior application to this Court, or any other court, for the relief requested in this Petition.

**WHEREFORE**, Eagle Star hereby applies to this Court for an order, pursuant to 9 U.S.C. § 9 and § 207, confirming the "Final Award" and, upon such confirmation, entry of a judgment in accordance with the confirmed "Final Award."

Dated: May 20, 2013
       New York, New York

Respectfully submitted,

Lloyd A. Gura (LAG 0500)
Amy J. Kallal  (AJK 4249)
Andrea Fort (AF 0793)
MOUND COTTON WOLLAN & GREENGRASS
One Battery Park Plaza
New York, NY  10004
(212) 804-4200
*Counsel for Petitioners*

4

Exhibit

1

1967

# DUPLICATE

## CONTRACT OF REINSURANCE

### issued to

ROYAL INSURANCE COMPANY, LIMITED (U. S. BRANCH)
AMERICAN AND FOREIGN INSURANCE COMPANY
THE BRITISH AND FOREIGN MARINE INSURANCE COMPANY LIMITED (U. S. BRANCH)
GLOBE INDEMNITY COMPANY
THE LIVERPOOL & LONDON & GLOBE INSURANCE COMPANY LIMITED (U. S. BRANCH)
THE LONDON AND LANCASHIRE INSURANCE COMPANY, LIMITED (U. S. BRANCH)
THE MARINE INSURANCE COMPANY, LIMITED (U. S. BRANCH)
NEWARK INSURANCE COMPANY
QUEEN INSURANCE COMPANY OF AMERICA
ROYAL INDEMNITY COMPANY
SAFEGUARD INSURANCE COMPANY
STANDARD MARINE INSURANCE COMPANY, LIMITED (U. S. BRANCH)
THAMES AND HERSEY MARINE INSURANCE COMPANY, LIMITED (U. S. BRANCH)

(hereinafter either individually or collectively called the "Group")

by

### CERTAIN INSURANCE COMPANIES
each for its own part and not one for the other

(hereinafter called the "Reinsurers")

### BLANKET FIRST EXCESS OF LOSS COVER

Whenever the term "Group" is used in this Contract, same shall be held to include any and/or all subsidiary Companies, which are or may hereafter be under the management of the Group provided, however, that immediate notice be given to the Reinsurers of any such subsidiary Companies which may hereafter come under the management of the Group prior to any risk attaching hereunder, with full particulars as to how such acquisition is likely to affect this Contract.  In the event of either party maintaining that such acquisition calls for alterations in existing terms and an agreement not being arrived at, then the business of such acquired Company is covered only for a period of forty-five days after notice to the Group that the Reinsurers do not wish to cover the business so acquired.

~ 1 ~

## ARTICLE 1

### BUSINESS COVERED

For and in consideration of the premiums to be paid by the Group to the Reinsurers as herein provided the Reinsurers agree to fully indemnify the Group as set forth in Article 5 herein in respect of the excess liability which may accrue to the Group under all policies, bonds, binders, contracts of Insurance or Reinsurance, Co-Insurance or Co-Indemnity, oral or written, or other evidences of liability (hereinafter referred to as "policy" or "policies" and/or "bond" or "bonds") issued or contracted for by the Group covering anywhere in the World subject to the exclusions set forth in Article 2 and the other terms and conditions of this Contract as set forth herein.

## ARTICLE 2

### EXCLUSIONS

Notwithstanding anything to the contrary contained herein, it is specially agreed that this Contract does not apply to but specifically excludes:-

1. Business classified by the Group as Life, Accident and/or Health and/or Surety business.

2. Policies covering Workmen's Compensation, General Liability and Automobile Liability business under which the Group receives complete reimbursement for losses and expenses thereunder.

3. Liability assumed by the Group as a member of any Pool, Association, Exchange or similar body other than:-

    Cotton Insurance Association
    Factory Insurance Association
    Furriers' Customers Syndicate
    Oil Insurance Association
    Underwriters Service Association
    Cargo Reinsurance Association
    The Tugboat Underwriting Syndicate
    Inland Waterways Insurance Association
    (Neare Gibbs & Co., Cincinnati, Ohio)
    George S. Kausler Pool
    Insurance Company of North America Export
    Cotton Reinsurance Accounting Agreement

4. Financial Guarantee and Insolvency. However, the liability of the Group under any bond covering losses due to negligence of any person or failure of any person to faithfully perform his duty or failure to account for and pay over money or other property in his custody, shall not be considered Financial Guarantee or Insolvency even though the Group is required to pay such loss because of the insolvency of such person or because of the insolvency of a financial institution in which he has deposited money.

5. Liability in respect of excess of loss reinsurance. This exclusion does not apply to any such reinsurance effected between any of the Companies reinsured hereunder or assumed from the Hawaiian Insurance and Guaranty Company, Ltd. Moreover, liability accepted by way of pro rata reinsurance in respect of excess of loss insurance shall not be excluded herefrom and with respect to Casualty business reinsurances written on an excess of loss basis on specific risks shall not be considered excess of loss reinsurance for the purposes of this Contract.

6. War Risks as per Article 17.

7. Nuclear Incident -

       (a)  Liability - Reinsurance
       (b)  Physical Damage - Reinsurance
       (c)  Boiler and Machinery - Reinsurance

          as per riders attached.

8. Target Risks as per list furnished concurrently herewith, such list to be subject to revision by notification by Guy Carpenter & Company, Inc. and written acceptance on behalf of the Group (applicable only to Fire and Allied Lines, Inland Marine and Multi-Peril as described in paragraph 2 of Article 6).

9. Off shore Oil Rigs including Platforms and associated equipment thereon (applicable only to Fire and Allied Lines, Inland Marine, Multi-Peril and Ocean Marine as described in paragraph 2 of Article 6).

10. Growing and/or standing crops and/or Timber written as such.

11. Loss or damage accruing to the Group, directly or indirectly, whether as an insurer or reinsurer, from any pool of insurers or reinsurers formed for the purpose of covering Atomic or Nuclear Energy risks.

- 3 -

12. Ocean Marine business written or assumed through W. J. Roberts & Co. Inc.

13. All business of the Excess and Casualty Reinsurance Association, whether assumed directly or indirectly by the Group.

## ARTICLE 3

### SELF-INSURED OBLIGATIONS

1.      As respects all business the subject matter hereof, this Contract shall cover all obligations of the Group assumed by it as a self-insurer (or self-insured obligations in excess of any valid and collectible insurance available to the Group) to the same extent as if all types of insurance covered by this Contract were afforded under the broadest form of agreements issued by the Group.

2.      An insurance or reinsurance wherein the Group hereby reinsured and/or its affiliated and/or subsidiary companies are named as the Insured or Reinsured party, either alone or jointly with some other party, shall be deemed to be an insurance or reinsurance coming within the scope of this Contract, notwithstanding that no legal liability may arise in respect thereof by reason of the fact that the Group hereby reinsured and/or its affiliated and/or subsidiary Companies are named as the Insured or Reinsured party or one of the Insured or Reinsured parties.

## ARTICLE 4

### TERM AND CANCELLATION

1.      This contract shall take effect at January 1, 1967 and shall remain in force for an indefinite period but may be terminated at any Midnight, December 31st by either party giving to the other six months' prior notice.

2.      If any law or regulation of the Federal or State or Local Government of any jurisdiction in which the Group is doing business shall render illegal the arrangements made in this Contract, this Contract can be terminated immediately, insofar as it applies to such jurisdiction, by the Group giving notice to the Reinsurers to such effect.

- 4 -

3.      With respect to all business covered hereunder except Fidelity and Burglary this Contract shall apply to accidents, casualties, disasters and occurrences taking place during the term this Contract is in force except as provided in General Condition A of Article 5.

4.      With respect to Fidelity and Burglary business, this Contract shall apply to occurrences discovered during the time this Contract is in force (irrespective of when such occurrences are sustained under the original policies or bonds).

5.      If this Contract shall terminate while a loss covered hereunder is in progress, it is agreed that, subject to the other conditions of this Contract, the Reinsurers shall indemnify the Group as if the entire loss had occurred during the term of this Contract, provided the loss covered hereunder started before the time of termination.

6.      In the case of a missing vessel or aircraft the date of the loss occurrence shall be deemed to be the date on which the vessel or aircraft is posted as missing at Lloyd's or, in the case of a missing vessel or aircraft not so posted, the last known safe date.

7.      This Contract is subject to the following clauses attached hereto as respects Ocean Marine policies covered hereunder:

    (a)  War and Strikes, etc. Risks Cancellation
         Clause No. 1.

    (b)  Automatic War and Strikes, etc. Termination
         Clause.

    (c)  Automatic War and Strikes Risks Termination
         of Cover Clause.

    (d)  War and Strikes, etc. Risks Cancellation
         Clause No. 2.


                        ARTICLE 5

INSURING CLAUSE

1.  SECTION 1

    A.  CASUALTY, FIDELITY, BURGLARY AND/OR BOILER AND MACHINERY

        This subsection applies to the Group's excess liability on
        the following types of business (including such business
        under Multi-Peril Package Policies) classified by the
        Group as:

                        - 5 -

(a) Workmen's Compensation, Employers' Liability
    and Voluntary Compensation, all including
    Occupational Disease.

(b) All Bodily and Personal Injury Liability.

(c) All Property Damage Liability classified as Casualty.

(d) Fidelity and Forgery.

(e) Burglary and Theft.

(f) Boiler and Machinery.

Subject to the general conditions set forth in this Article
no claim to be paid for any loss under this subsection of
this Article unless the Group has paid or advanced or agreed
to pay or advance or becomes liable to pay to or on behalf of
its Insured or Reinsured on account of loss by any one accident,
disaster, casualty or occurrence an amount exceeding $1,000,000,
and the sum recoverable under this Contract shall be 100% of the
amount the excess of $1,000,000 ultimate net loss under this sub-
section in respect of each and every loss sustained by the Group,
but such sum recoverable shall not exceed a further $3,000,000
,in respect of any one such accident, disaster, casualty or
occurrence.

B.   PROPERTY

(It is specifically agreed that losses from the perils of
Tornado and/or Cyclone and/or Hurricane and/or Windstorm
and/or Hail and/or Flood shall not be recoverable under
this subsection.)

This subsection applies to the Group's excess liability
on all business other than that covered under subsection A
and includes but is not limited to the following types of
business classified by the Group as

(a) Fire and Allied Lines

(b) Inland Marine

(c) Glass

(d) Automobile Physical Damage

(e) Multi-Peril (other than coverages under such policies which if were written separately would be classified as Casualty, Fidelity, Burglary and/or Boiler and Machinery as described and covered under subsection A above.)

(f) Ocean Marine

(g) Aviation

Subject to the general conditions set forth in this Article no claim to be paid for any loss under this subsection of this Article unless the Group has paid or advanced or agreed to pay or advance or becomes liable to pay to or on behalf of its Insured or Reinsured on account of loss by any one accident, disaster, casualty or occurrence an amount exceeding $2,000,000 under this subsection and the sum recoverable under this Contract shall be 90% of the amount the excess of $2,000,000 ultimate net loss under this subsection in respect of each and every loss sustained by the Group but such sum recoverable shall not exceed a further $1,800,000 (being 90% of $2,000,000) in respect of any one such accident, disaster, casualty or occurrence.

## SECTION 2

A. CASUALTY, FIDELITY, BURGLARY AND/OR BOILER AND MACHINERY

This subsection applies to the Group's excess liability on the types of business covered in subsection A of Section 1 of this Article.

Subject to the general conditions set forth in this Article no claim to be paid for any loss under this subsection of this Article unless the Group has paid or advanced or agreed to pay or advance or becomes liable to pay to or on behalf of its Insured or Reinsured on account of loss by any one accident, disaster, casualty or occurrence an amount exceeding $4,000,000 and the sum recoverable under this Contract shall be 100% of the amount the excess of $4,000,000 ultimate net loss under this subsection in respect of each and every loss sustained by the Group but such sum recoverable shall not exceed a further $8,000,000 in respect of any one such accident, disaster, casualty or occurrence.

B.  PROPERTY

This subsection applies to the Group's excess liability on the
types of business covered in subsection B of Section 1 of this
Article.  (However, it is understood that losses arising from
Tornado and/or Cyclone and/or Hurricane and/or Windstorm and/or
Hail and/or Flood are not excluded from the coverage afforded
under this subsection.)

Subject to the general conditions set forth in this Article no
claim to be paid for any loss under this subsection of this
Article unless the Group has paid or advanced or agreed to pay
or advance or becomes liable to pay to or on behalf of its
Insured or Reinsured on account of loss by any one accident,
disaster, casualty or occurrence an amount exceeding $4,000,000
and the sum recoverable under this Contract shall be 90% of the
amount the excess of $4,000,000 ultimate net loss under this
subsection in respect of each and every loss sustained by the
Group but such sum recoverable shall not exceed a further
$7,200,000 (being 90% of $8,000,000) in respect of any one such
accident, disaster, casualty or occurrence.

In the event that a loss occurrence involves business or perils to
which different limits and retentions apply the retention of the Group and
the amount recoverable hereunder shall be calculated as follows:

(a)  The retention shall be the total of the individual retentions
prorated in the proportion that the Group's ultimate net loss
applicable to each retention bears to the Group's total ulti-
mate net loss in respect of business and/or perils applicable
to this Contract.

(b)  The amount recoverable shall be the amount of the loss excess of
the retention calculated in (a) above subject to the following:

(i)  such excess shall not exceed the difference between
the retention and $12,000,000

(ii) such excess shall be multiplied by a total percentage
equal to 90% plus one tenth of the percentage obtained
by dividing the Group's ultimate net loss in respect of
business covered by subsection A of sections 1 and 2 of
this Article by the Group's total ultimate net loss in
respect of business and/or perils covered by this
Contract.

Notwithstanding the foregoing, it is mutually agreed that at its sole
option the Group may disregard the above provisions and consider only the ultimate
net loss in respect of business covered by subsection A of Sections 1 and 2 of this
Article for purposes of loss recovery hereunder.

- 8 -

2. GENERAL CONDITIONS

A.  Notwithstanding the foregoing, with respect to Occupational and other diseases and where the Group's original policies provide for aggregate limits of liability this Contract shall cover (with respect to each hazard or project subject to an aggregate limit) excess of the Group's respective net retentions as set forth in subsections A of Sections 1 and 2 in the aggregate during any one original policy year but such sum recoverable hereunder shall not exceed the respective limits of liability set forth in subsections A of Sections 1 and 2 in the aggregate during any one original policy year.

In respect of such diseases, this Contract shall apply only to losses arising from cases where the employee's cessation from work first occurs during a policy year covered hereunder.

"Policy year" shall mean "each separate original policy period of not exceeding twelve months commencing at the inception, anniversary or renewal date

    (a)  after January 1, 1966

    (b)  as and from January 1, 1967".

It being understood that this Contract shall only be liable for any loss incurred on or after January 1, 1967 although losses incurred during the part of the twelve months' period prior to January 1, 1967 may be included to make up the deductible over which this Contract pays.

"Aggregate" shall mean "ultimate net loss incurred in the aggregate during any one policy year".

In the event of cancellation of this Contract, liability hereunder shall cease in respect of the unexpired portions of the original policies.

B.  It is agreed that recoveries under Section 1 shall be disregarded for the purpose of calculating the ultimate net loss under Section 2 and such recoveries shall inure to the sole benefit of the Group.

C.  It is warranted that with respect to all accidents, disasters, casualties or occurrences the deductibles as set forth in this Article shall be retained by the Group at its own risk and the Group shall be co-participant with Reinsurers for the remaining 10% of the excess loss covered hereunder with respect to subsections B of Sections 1 and 2.

- 9 -

D.  With respect to Third Party Liability insurance of any kind this Contract shall protect the Group, within the limits hereof, in connection with any loss for which the Group may be legally liable to pay in excess of the limit of its original policy, such loss in excess of the limit having been incurred because of failure by it to settle within the policy limit or by reason of alleged or actual negligence, fraud or bad faith in rejecting an offer of settlement or in the preparation of the defence or in the trial of any action against its Insured or Reinsured or in the preparation or prosecution of an appeal consequent upon such action.

## ARTICLE 6

DEFINITIONS

1.  A.  Subject to the exceptions listed below in paragraphs B, C, and D the terms "accident", "disaster", "casualty", or "occurrence" as used in this Contract shall be deemed and construed to mean any one, or more than one, accident, disaster or occurrence arising or resulting from one event upon which liability is predicated under any one, or more than one, of the policies covered by this Contract, and, as respects liability arising out of products manufactured, made, handled, distributed or sold by an assured, liability arising out of property damage or out of malpractice, said term shall also be deemed and construed to mean any one, or more than one, accident, happening or occurrence which the available evidence shows to be the probable common cause or causes of more than one claim under a policy, or policies, or renewals thereof, irrespective of the time of the presentation of such claims to the assured or the Group, but this Contract does not cover any claim or claims arising from a common cause, which are not first advised during the period of this Contract.

B.  With respect only to Property business wherever any one accident, disaster, casualty or occurrence involves any of the under mentioned perils (either separately or in conjunction with other perils) then as regards such undermentioned perils the terms "accident", "disaster", "casualty", or "occurrence" shall mean

(a)  Tornado, Cyclone, Hurricane, Windstorm and/or Hail:

all loss or losses sustained by the Group from these perils occurring during any period of 72 consecutive hours arising out of or caused by the same atmospheric disturbance.

- 10 -

(b) <u>Riot, Riot attending Strike, Civil Commotion,
Vandalism and Malicious Mischief:</u>

the sum total of all losses to the Group by
reason of one or more occurrences within any
one period of 72 consecutive hours commenc-
ing within the term of this Contract, within
the area of one principal municipality or
county and the municipalities or counties
contiguous thereto.

Except that no one elected 72 hour period
in any one area as defined above shall over-
lap any other elected 72 hour period in any
one such area, the Group may elect the moment
from which the aforesaid period of 72 hours
shall be deemed to have commenced, the Rein-
surers hereon being responsible only for
their proportion of the loss to the Group in
respect of the said elected period of 72
hours.

(c) <u>Earthquake</u>

All losses caused by Earthquake during each
period of 72 consecutive hours commencing
as hereinafter mentioned whether such Earth-
quakes were continuous or sporadic in their
scope and irrespective of whether they were
due to the same seismic conditions.

(d) It is agreed that the Group may elect the
moment from which any of the 72 hour periods
specified in subparagraphs (a) and (c) above
shall be deemed to have commenced, but no two
such periods in respect of the same accident,
disaster, casualty or occurrence shall over-
lap.

C.  With respect to business classified by the Group as Inland Marine
and/or Ocean Marine, if two or more losses arise during the course of any
one trip by land transportation conveyance or any one voyage by a water-
borne vessel, the Group shall have the option of adding them together and
treating them as one loss.  However, this paragraph shall not apply to
Hulls & Machinery, etc., Disbursements, Increased Values, Premiums or
Protection and Indemnity Risks on any vessel or to Shipowners other in-
terests insured for a period of time.

- 11 -

D.  In respect of business classified by the Group as Fidelity the terms "accident", "disaster", "casualty" or "occurrence" shall mean

(a)  any loss or series of losses whether covered under one or more bonds resulting from acts or omissions of any one person or in which such person is concerned or implicated, or

(b)  any loss or losses, other than as specified in (a), and whether covered under one or more bonds, resulting from any one casualty or event.

It is further agreed that any definition of a single loss occurrence or contingency under any bond covered by this Contract which is in conflict with (a) or (b) above shall not apply.

2.      The term "Property" as used herein is understood to mean business classified by the Group as Fire and Allied Lines, Inland Marine, Glass, Automobile Physical Damage, Ocean Marine and Aviation, and Multi-Peril (other than coverages under Multi-Peril policies which if written separately would be classified as Casualty, Fidelity, Burglary and/or Boiler and Machinery as described and covered under subsections A of Sections 1 and 2 of Article 5).

## ARTICLE 7

__ULTIMATE NET LOSS__

1.      The term "Ultimate Net Loss" shall be understood to mean the actual loss or losses sustained by the Group under its policies, such loss or losses to include expenses of litigation, if any, and all other loss expenses of the Group (excluding general office overhead and salaries of its officials and regular employees but including the pro rata share of salaries and expenses of the Group's outside employees according to the time occupied in adjusting such loss and also including expenses of the Group's officials incurred in connection with the loss but such inclusion shall not apply to salaries of the Group's officials or any normal overhead charges) but salvages and any other recoveries, including recoveries under all reinsurances (except as provided in Article 5) are first to be deducted from such loss to arrive at the amount of liability, if any, attaching hereunder. Nothing in this clause, however, shall be construed as meaning that losses are not recoverable hereunder until the ultimate net loss to the Group has been ascertained.

- 12 -

2.        All salvages, recoveries and payments recovered or received subsequent to a loss settlement under this Contract shall be applied as if recovered or received prior to the said settlement and all necessary adjustments shall be made by the parties hereto.

3.        Whenever the Group issues a lost instrument bond or a lost instrument letter of indemnity, for salvage purposes or in lieu of loss payment under its bond or policy, Reinsurers agree to accept liability under such bond or letter of indemnity in accordance with the terms of this Contract.

## ARTICLE 8

### NET RETAINED LINES

1.        Except as otherwise provided in Article 5 this Contract applies only to that portion of any insurance or reinsurance which the Group retains net for its own account, and in calculating the amount of any loss hereunder and also in computing the amount or amounts in excess of which this Contract attaches, only loss or losses in respect of that portion of any insurance or reinsurance which the Group retains net for its own account shall be included.

2.        The amount of Reinsurers' liability hereunder in respect of any loss or losses shall not be increased by reason of the inability of the Group to collect from any other Reinsurers whether specific or general, any amounts which may have become due from them whether such inability arises from the insolvency of such other Reinsurers or otherwise.

## ARTICLE 9

### REINSURANCE TO BE MAINTAINED

The Group has in force at the inception of this Contract the following Reinsurance Covers, and it is warranted that said Reinsurance Covers shall be maintained during the term hereof or so deemed:

1. Ocean Marine

Hull
- $500,000 excess of $100,000
  Surplus $500,000 over $100,000

Cargo
- Total $7,500,000 per vessel per voyage but per shipment for Registered Mail Account and per occurrence on land excess maximum $150,000 per occurrence.

Special Surplus - $1,000,000 warehouse
                  $2,000,000 ocean

2. Aviation

| | |
|---|---|
| Hull Surplus | - $1,500,000 surplus over $300,000 any one aircraft |
| Admitted Liability and Accident Surplus | - $1,500,000 surplus over $ 300,000 any one aircraft |
| Legal Liability Excess | - $9,700,000 excess $300,000 any one aircraft |
| Aviation Combination Catastrophe | - $1,300,000 excess $200,000 any one accident |

3. Boiler and Machinery

$3,000,000 excess of $2,000,000 each occurrence

4. Five Line Property Surplus Treaty

With respect to 1 and 2 above the original deductibles and unreinsured percentages, if any, under such reinsurances shall be retained net by the Group and not reinsured hereunder.

ARTICLE 10

REINSTATEMENT

1. Applying to CASUALTY, FIDELITY, BURGLARY AND/OR BOILER AND MACHINERY LOSSES

With respect to losses under the types of business described and covered under subsections A of Sections 1 and 2 of Article 5, in the event of the whole or any portion of the indemnity under this Contract being exhausted by loss, the amount so exhausted shall be automatically reinstated from the time of the occurrence of the loss (or from the time of discovery of the loss in respect of business coming within the scope of (d) of subsections A of Sections 1 and 2 of Article 5) without payment of additional premium. Nevertheless the Reinsurers' liability in any one accident, disaster, casualty or occurrence shall never exceed the respective limits set forth in Article 5.

2.  Applying to losses other than those coming within the scope
    of paragraph 1

In the event of the whole or any portion of the indemnity under
this Contract being exhausted by loss the amount so exhausted
shall be automatically reinstated from the time of the occurr-
ence of the loss and the Group agrees to pay to the Reinsurers
additional premium calculated by applying to 25% of the premium
payable to Reinsurers for the twelve months' period ending at
the next succeeding 12:01 A.M. 1st January, the percentage that
the amount of loss paid by Reinsurers is of the total amount
of coverage afforded under this Contract for the classifica-
tion or peril giving rise to the loss.

In the event that more than one classification or peril coming
within the scope of paragraph 2 is involved in the same loss
then the "total amount of coverage" for the purposes of the
foregoing calculation shall be the greater of the amounts of
coverage afforded under this Contract for the classifications
or perils involved in the loss.  Nevertheless, the Reinsurers'
liability in any one accident, disaster, casualty or occurrence
shall never exceed the respective limits set forth in Article
5, or in respect of all losses occurring in any one twelve
months' period commencing 12:01 A.M. 1st January during the
currency of this Contract Reinsurers' liability shall never ex-
ceed:

    90% of $4,000,000 under subsection B of Section 1
                    of Article 5

    90% of $16,000,000 under subsection B of Section 2
                    of Article 5

3.  Applying to combination loss involving both paragraph 1 and
    paragraph 2 above

In the event that a loss paid by Reinsurers under Section 1
and/or 2 of Article 5 involves classifications or perils
coming within the scope of both paragraphs 1 and 2 above,
then the amount of the loss paid by Reinsurers applicable to
paragraph 2 above shall be pro rata of the loss paid by Re-
insurers in the proportion that the Group's ultimate net loss
applicable to each classification or peril bears to the
Group's total ultimate net loss applicable to this Contract.

- 15 -

ARTICLE 11

PREMIUM

1.     The premium to be paid to the Reinsurers shall be 62½¢% of the Gross Net Earned Premium Income of the Group during the term of this Contract.

2.     For all purposes hereof, Gross Net Earned Premium Income shall mean Gross Net Earned Premiums of the Group on its entire writings, including premiums derived from business excluded hereunder, as calculated for their Annual Statements.  Notwithstanding the foregoing, it is agreed that Life, Accident and Health, Surety premiums and premiums derived from American Hull Insurance Syndicate and W. J. Roberts & Co. Inc. shall not be included in such Gross Net Earned Premium Income of the Group.

3.     An initial deposit premium of $546,875 shall be paid by the Group to Reinsurers for the quarter commencing January 1, 1967.  As soon as practicable after March 31, 1967, the Group shall furnish to Reinsurers a statement of the actual Gross Net Earned Premium Income for the first quarter of 1967 and adjustment shall be made in accordance with the foregoing paragraphs.  Thereafter, the premium shall be paid by the Group to Reinsurers on a monthly basis commencing at the end of April 1967 and at the end of each subsequent month and such premium shall be computed by applying the rate set forth in the first paragraph of this Article to the Gross Net Earned Premium Income of the Group as defined above for each month.

4.     The Minimum Annual Premium hereunder for the annual period January 1, 1967 through December 31, 1967 shall be $2,187,500 and thereafter to be agreed for each subsequent annual period.

ARTICLE 12

NOTICE OF LOSS AND LOSS SETTLEMENTS

1.     In the event of an accident, disaster, casualty or occurrence occurring which either results in or appears to be of serious enough nature as probably to result in a loss involving this Contract the Group shall give notice as soon as reasonably practicable to Reinsurers through Guy Carpenter & Company, Inc., 110 William Street, New York, New York 10038.

2.     The Reinsurers agree to abide by the loss settlements of the Group, such settlements to be considered as satisfactory proofs of loss, and amounts falling to the share of the Reinsurers shall be immediately

- 16 -

payable to the Group by them upon reasonable evidence of the amount paid by the Group being presented to Reinsurers through Guy Carpenter & Company, Inc. by the Group. All papers in the possession of the Group in connection with the adjustment of said loss shall at all times within a reasonable period be open to the inspection of a properly authorized representative of the Reinsurers.

## ARTICLE 13

LOSS RESERVES  (Applies only to Reinsurers domiciled outside of the United States)

1.      As regards policies or bonds issued by the Group coming within the scope of this Contract, the Group agrees that when it shall file with the Insurance Department or set up on its books reserves for losses which it shall be required to set up by law it will forward to the Reinsurers a statement showing the proportion of such loss reserves which is applicable to them. The Reinsurers hereby agree that they will apply for and secure delivery to the Group a clean irrevocable Letter of Credit issued by First National City Bank of New York in an amount equal to Reinsurers' proportion of said loss reserves.

2.      The Group undertakes to use and apply any amounts which it may draw upon such Credit for the following purposes only:-

(a)   To pay the Reinsurers' share or to reimburse the Group for the Reinsurers' share of any liability for loss reinsured by this rein-surance Contract, each withdrawal to be debited on the Group's records to the Loss Reserve Account Fund established for such liability, as hereinbefore provided.

(b)   To make refund of any sum which is in excess of the actual amount required to pay Reinsurers' share of any liability reinsured by this rein-surance Contract.

3.      First National City Bank of New York shall have no responsibility whatsoever in connection with the propriety of withdrawals made by the Group or the disposition of funds withdrawn, except to see that withdrawals are made only upon the order of properly authorized representatives of the Group.

## ARTICLE 14

### REINSURANCE TAX

In consideration of the terms under which this Contract is issued, the Group undertakes not to claim any deduction of the premium hereon when making Canadian tax returns or when making tax returns, other than Income or Profits Tax returns, to any State or Territory of the United States of America or to the District of Columbia.

### FEDERAL EXCISE TAX   (Applies only to those Reinsurers unlicensed in the U.S.A.)

1.      The Reinsurers have agreed to allow for the purpose of paying the Federal Excise Tax, one per cent of the premium payable hereon to the extent such premium is subject to Federal Excise Tax.

2.      It is understood and agreed that in the event of any return of premium becoming due hereunder the Reinsurers will deduct one per cent from the amount of the return and the Group or its agent should take steps to recover the tax from the U. S. Government.

## ARTICLE 15

### CURRENCY

1.      Wherever the word "Dollars" and the sign "$" appear in this Contract they shall be construed to mean United States Dollars, excepting in those cases where the policies are issued by the Group in Canadian Dollars in which cases they shall mean Canadian Dollars.

2.      In the event of the Group being involved in a loss requiring payment in United States and Canadian Currency, the Group's retention and the amount recoverable hereunder shall be apportioned to the two currencies in the same proportion as the amount of ultimate net loss in each currency bears to the total amount of ultimate net loss paid by the Group.

3.      For purposes of this Contract, where the Group receives premiums or pays losses in currencies other than United States or Canadian Currency, such premiums and losses shall be converted into United States Dollars at the actual rates of exchange at which these premiums and losses are entered in the Group's books.

ARTICLE 16

ACCESS TO RECORDS

The Reinsurers or their duly accredited representatives shall have free access to the books and records of the Group at all reasonable times for the purpose of obtaining information concerning this Contract or the subject matter thereof.

ARTICLE 17

WAR RISKS

1.      This exclusion of War Risks shall apply to Burglary and to the types of business described and covered under subsection B of Sections 1 and 2 of Article 5 except Ocean Marine and Aviation.

2.      As regards interests which at time of loss or damage are on shore, no liability shall attach hereto in respect of any loss or damage which is occasioned by war, invasion, hostilities, acts of foreign enemies, civil war, rebellion, insurrection, military or usurped power, or martial law or confiscation by order of any govern-ment or public authority.

3.      This War Exclusion Clause shall not, however, apply to in-terests which at time of loss or damage are within the territorial limits of the United States of America (comprising the fifty States of the Union and the District of Columbia, its territories and possessions including the Panama Canal Zone and the Commonwealth of Puerto Rico and including Bridges between the U.S.A. and Mexico provided they are under United States ownership), Canada, St. Pierre and Miquelon, provided such interests are insured under policies, endorsements or binders containing a standard war or hostilities or warlike operations exclusion clause.

4.      Nevertheless this clause shall not be construed to apply to Riots, Strikes, Civil Commotion, Vandalism, Malicious Damage includ-ing acts committed by agents of any government, party or faction en-gaged in war, hostilities, or other warlike operation, providing such agents are acting secretly and not in connection with any operations of military or naval armed forces in the country where the interest in-sured is situated.

ARTICLE 18

SERVICE OF SUIT CLAUSE (U.S.A.)  (Applies only to those Reinsurers unlicensed in the U.S.A.)

1.      It is agreed that in the event of the failure of Reinsurers hereon to pay any amount claimed to be due hereunder, Reinsurers hereon,

- 19 -

at the request of the Group, will submit to the jurisdiction of any Court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court. It is further agreed that service of process in such suit may be made upon Messrs. Mendes and Mount, 27 William Street, New York, New York 10005 and/or their Nominees, and that in any suit instituted against any one of them upon this Contract Reinsurers will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

2.      The above-named are authorized and directed to accept service of process on behalf of Reinsurers in any such suit and/or upon the request of the Group to give a written undertaking to the Group that they will enter a general appearance upon Reinsurers' behalf in the event such a suit shall be instituted.  Further pursuant to any statute of any state, territory or district of the United States of America which makes provision therefor, Reinsurers hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Group or any beneficiary hereunder arising out of this Contract, and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.


## ARTICLE 19

INSOLVENCY

1.      In the event of the insolvency of the Group, this reinsurance shall be payable directly to the Group, or to its liquidator, receiver, conservator or statutory successor on the basis of the liability of the Group without diminution because of the insolvency of the Group or because the liquidator, receiver, conservator or statutory successor of the Group has failed to pay all or a portion of any claim.  It is agreed, however, that the liquidator, receiver, conservator or statutory successor of the Group shall give written notice to the Reinsurers of the pendency of a claim against the Group indicating the policy or bond reinsured which claim would involve a possible liability on the part of the Reinsurers within a reasonable time after such claim is filed in the conservation or liquidation proceeding or in the receivership, and that during the pendency of such claim the Reinsurers may investigate such claim and interpose, at their own expense, in the proceeding where such claim is to be adjudicated any defence or defences that they may deem

available to the Group or its liquidator, receiver, conservator or statutory successor. The expense thus incurred by the Reinsurers shall be chargeable, subject to the approval of the court, against the Group as part of the expense of conservation or liquidation to the extent of a pro rata share of the benefit which may accrue to the Group solely as a result of the defence undertaken by the Reinsurers.

2.      Where two or more Reinsurers are involved in the same claim and a majority in interest elect to interpose defence to such claim, the expense shall be apportioned in accordance with the terms of the reinsurance agreement as though such expense had been incurred by the Group.

3.      The reinsurance shall be payable by the Reinsurers to the Group or to its liquidator, receiver, conservator or statutory successor, except as provided by Section 315 of the New York Insurance Law or except (a) where the contract specifically provides another payee of such reinsurance in the event of the insolvency of the Group, and (b) where the Reinsurers with the consent of the direct insured or insureds have assumed such policy obligations of the Group as direct obligations of the Reinsurers to the payees under such policies and in substitution for the obligations of the Group to such payees.

ARTICLE 20

ARBITRATION

If any dispute shall arise between the Group and the Reinsurers with reference to the interpretation of this Contract or their rights with respect to any transaction involved, the dispute shall be referred to three arbitrators, one to be chosen by each party and the third by the two so chosen. If either party refuses or neglects to appoint an arbitrator within thirty (30) days after the receipt of written notice from the other party requesting it to do so, the requesting party may nominate two arbitrators, who shall choose the third. Each party shall submit its case to the arbitrators within thirty (30) days of the appointment of the arbitrators. The arbitrators shall consider this Contract an honorable engagement rather than merely a legal obligation; they are relieved of all judicial formalities and may abstain from following the strict rules of law. The decision of a majority of the arbitrators shall be final and binding on both the Group and the Reinsurers. The expense of the arbitrators and of the arbitration shall be equally divided between the Group and the Reinsurers. Any such arbitration shall take place in New York, New York, unless some other location is mutually agreed upon by the Group and the Reinsurers.

- 21 -

ARTICLE 21

INTERMEDIARY

Guy Carpenter & Company, Inc. are hereby recognized as the
Intermediary negotiating this Contract for all business hereunder
except Canadian business, on which Guy Carpenter & Company (Canada)
Limited are hereby recognized as the Intermediary. All communications
relating thereto shall be transmitted to the Group and the Reinsurers
through Guy Carpenter & Company, Inc., 110 William Street, New York,
New York 10038, (acting in behalf of themselves and Guy Carpenter &
Company (Canada) Limited).

ARTICLE 22

PROPORTION CLAUSE

This Contract being for thirteen decimal four four
(13.44624%) part of One Hundred Per Cent (100%) six two four per cent covers its pro rata
proportion of the risks and amounts set out herein, and the Reinsurer
hereon is entitled to a corresponding proportion of the premium pro-
viced herein.

IN WITNESS WHEREOF, this Contract for the proportion stated in Article 22
is signed in duplicate for and on behalf of the Reinsurer named below in
1968. on or as of the day of

Company

BY: CERTAIN INSURANCE COMPANIES

as fully set out in the schedule attached hereto.

Lines signed hereon as shewn in the schedule attached hereto total 22.4104% and are
expressed as percentages of 100% of 60% of the risks and amounts expressed herein being
equal to the figure of 13.44624% part of 100% set forth above.

- 22 -

For and on behalf of Reinsurers.

In witness whereof I being a representative of the Leading Office which is duly authorised by the Reinsurers have hereunto subscribed my name on their behalf.

HOME & OVERSEAS INSURANCE COMPANY LIMITED          .8331%

EAGLE STAR INSURANCE COMPANY LIMITED (S & E A/c)      4166%

JAL/LT

WAR AND STRIKES ETC. RISKS CANCELLATION CLAUSE NO. 1

THESE CLAUSES APPLY ONLY IN RESPECT OF HULLS, SHIP-
OWNERS' OTHER INTERESTS, CHARTERERS' INTERESTS
(OTHER THAN CARGO), BUILDERS' RISKS, SECOND SEAMEN'S
INSURANCES AND REINSURANCES ON ANY SUCH INTERESTS.

The following paragraph applies only to risks on which
the Original Policies attach on or after the date on
which the cancelment becomes operative.

The Reinsurers or any of them or the Group may, at any time, terminate
liability under this Contract in respect of Risks of War, Strikes, Riots,
Civil Commotions, Malicious Damage, etc. or any of them, either locally
or generally by giving fourteen (14) days notice in writing.  Such
notice shall apply to all risks attaching after the expiry of fourteen
(14) days from Midnight Greenwich Mean Time of the day on which the
notice of cancellation is issued by or to the Reinsurers.

The following paragraph applies only to risks on which
the Original Policies attached before the date on which
the cancelment becomes operative.

The Reinsurers or any of them or the Group may, at the time, terminate
liability under this Contract in respect of Risks of War, Strikes, Riots,
Civil Commotions, Malicious Damage, etc. or any of them, either locally
or generally by giving fourteen (14) days notice in writing.  Such
notice shall apply to all losses occurring after the expiry of fourteen
(14) days from Midnight Greenwich Mean Time of the day on which the
notice of cancellation is issued by or to the Reinsurers.  The Rein-
surers agree, however, to reinstate the reinsurance of such risks sub-
ject to agreement between the Reinsurers and the Group, prior to the
date on which the cancelment becomes operative, of new rate of premium
and/or conditions and/or navigation warranties in respect of such risks.

The fourteen (14) days notice periods provided for in the foregoing
part of this clause shall not include Saturdays, Sundays or Public
Holidays in Great Britain or the United States of America.

## AUTOMATIC WAR AND STRIKES TERMINATION CLAUSE

Whether or not notice of cancellation in respect of War, Strikes, Riots, Civil Commotions, Malicious Damage etc. Risks has been given in accordance with the provisions of the preceding clauses, liability hereunder in respect of War, Strikes, Riots, Civil Commotions, Malicious Damage, etc. Risks shall Terminate Automatically in accordance with the American Automatic War and Strikes Risks Termination Clause (1.7.63) contained in the Original Policy or Policies or, if the Original Policies or any of them do not contain the American Automatic War and Strikes Risks Termination Clause (1.7.63) liability hereunder in respect of War, Strikes, Riots, Civil Commotions, Malicious Damage, etc. Risks shall, in such cases, Terminate Automatically in accordance with the Automatic War and Strikes Risks Termination of Cover Clause set forth below.

## 'AUTOMATIC WAR AND STRIKES RISKS TERMINATION OF COVER CLAUSE'

'Cover hereunder in respect of War, Strikes, Riots, Civil Commotions, Malicious Damage, etc. Risks shall terminate automatically upon the outbreak of War (whether there be a declaration of War or not) between any of the following countries:-

> United Kingdom,
> United States of America,
> France,
> The Union of Soviet Socialist Republics,
> The People's Republic of China.

Cover hereunder in respect of War, Strikes, Riots, Civil Commotions, Malicious Damage, etc. Risks shall terminate automatically upon the occurrence of any hostile detonation of any nuclear weapon of war, wheresoever and whensoever such detonation may occur and whether or not any vessel in connection with which cover is granted hereunder may be involved.  The term 'Nuclear Weapon of War' is understood to mean any weapon of war employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter.

Cover hereunder in respect of War, Strikes, Riots, Civil Commotions, Malicious Damage, etc. Risks on any vessel in connection with which cover is granted hereunder shall terminate automatically in the event of the vessel being requisitioned, either for title or use.'

In the event of the termination of War Risks in accordance with the provisions of this or the preceding clauses, this Contract shall thereafter be subject to the 'American Institute F.C.&S. Clause (September 1959)'.

## WAR AND STRIKES ETC. RISKS CANCELLATION CLAUSE NO. 2

THIS CLAUSE APPLIES IN RESPECT OF ALL INTERESTS COVERED
BY THIS CONTRACT EXCEPT HULLS, SHIPOWNERS' OTHER INTERESTS,
CHARTERERS' INTERESTS (OTHER THAN CARGO), BUILDERS'
RISKS, SECOND SEAMEN'S INSURANCES AND REINSURANCES ON ANY
SUCH INTERESTS.

The Reinsurers or any of them or the Group may, at any time, sub-
ject to the following part of this clause, exclude liability
under this Contract in respect of all risks of war, strikes, riots,
civil commotions, malicious damage, etc., or any of them, either
locally or generally by giving at least seven (7) days notice in
writing.  Such notice shall apply to all interests accepted facul-
tatively by the Group after the expiry of the notice and also to
all interests coming at the risk of the Group under all open poli-
cies and open covers after the expiry of the notice.

Notwithstanding the foregoing paragraph, the Reinsurers agree that,
unless they are notified to the contrary by the Group, they will
treat the notice as inoperative and will hold covered such risks on
all interests to which the notice applies at a premium to be
arranged.

Premium received by the Group in respect of such risks as are held
covered by the preceding paragraph shall be reported in a separate
statement as soon as practicable after the withdrawal of the notice
or the expiry of this Contract, as the case may be, and the pro-
portion of such premium required by the Reinsurers shall thereupon
be determined and paid.

The seven (7) days notice period provided for in the foregoing part
of this clause shall not include Saturdays, Sundays, or Public
Holidays in Great Britain or the United States of America.

## NUCLEAR INCIDENT EXCLUSION CLAUSE—LIABILITY—REINSURANCE—U.S.A.

(1) This Contract does not cover any loss or liability accruing to the Reassured as a member of, or subscriber to, any association of insurers or reinsurers formed for the purpose of covering nuclear energy risks or as a direct or indirect reinsurer of any such member, subscriber or association.

(2) Without in any way restricting the operation of paragraph (1) of this Clause it is understood and agreed that for all purposes of this Contract all the original policies of the Reassured (new, renewal and replacement) of the classes specified in Clause II of this paragraph (2) from the time specified in Clause III in this paragraph (2) shall be deemed to include the following provision (specified as the Limited Exclusion Provision):

**Limited Exclusion Provision.\***

    I.  It is agreed that the policy does not apply under any liability coverage,
        to { injury, sickness, disease, death or destruction
           { bodily injury or property damage   with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability.

    II.  Family Automobile Policies (liability only), Special Automobile Policies (liability only), Farmers Comprehensive Personal Liability Policies (liability only), Comprehensive Personal Liability Policies (liability only) or policies of a similar nature; and the liability portion of combination forms related to the four classes of policies stated above, such as the Comprehensive Dwelling Policy and the applicable types of Homeowners Policies.

    III.  The inception dates and thereafter of all original policies as described in II above, whether new, renewal or replacement, being policies which either
        (a) become effective on or after 1st May, 1960, or
        (b) become effective before that date and contain the Limited Exclusion Provision set out above;
      provided this paragraph (2) shall not be applicable to Family Automobile Policies, Special Automobile Policies, or policies or combination policies of a similar nature, issued by the Reassured on New York risks, until 90 days following approval of the Limited Exclusion Provision by the Governmental Authority having jurisdiction thereof.

(3) Except for those classes of policies specified in Clause II of paragraph (2) and without in any way restricting the operation of paragraph (1) of this Clause, it is understood and agreed that for all purposes of this Contract the original liability policies of the Reassured (new, renewal and replacement) affording the following coverages:
    Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability (including Massachusetts Motor Vehicle or Garage Liability)
shall be deemed to include, with respect to such coverages, from the time specified in Clause V of this paragraph (3), the following provision (specified as the Broad Exclusion Provision):

**Broad Exclusion Provision.\***

    It is agreed that the policy does not apply:

    I.  Under any Liability Coverage, to { injury, sickness, disease, death or destruction
                                { bodily injury or property damage
        (a) with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or
        (b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

    II.  Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating
        to { immediate medical or surgical relief,   to expenses incurred with respect
          { first aid,
        to { bodily injury, sickness, disease or death
          { bodily injury           resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

    III.  Under any Liability Coverage,
        to { injury, sickness, disease, death or destruction
          { bodily injury or property damage   resulting from the hazardous properties of nuclear material, if
        (a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;
        (b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or
        (c) the { injury, sickness, disease, death or destruction
            { bodily injury or property damage   arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only
        to { injury to or destruction of property at such nuclear facility.
          { property damage to such nuclear facility and any property thereat.

*continued overleaf.*

# DUPLICATE

ENDORSEMENT NO. 1

to

BLANKET FIRST EXCESS OF LOSS COVER

CONTRACT OF REINSURANCE

issued to

ROYAL INSURANCE COMPANY, LIMITED (U. S. BRANCH)

AMERICAN AND FOREIGN INSURANCE COMPANY

THE BRITISH AND FOREIGN MARINE INSURANCE COMPANY LIMITED (U. S. BRANCH)

GLOBE INDEMNITY COMPANY

THE LIVERPOOL & LONDON & GLOBE INSURANCE COMPANY LIMITED (U. S. BRANCH)

THE LONDON AND LANCASHIRE INSURANCE COMPANY, LIMITED (U. S. BRANCH)

THE MARINE INSURANCE COMPANY, LIMITED (U. S. BRANCH)

NEWARK INSURANCE COMPANY

QUEEN INSURANCE COMPANY OF AMERICA

ROYAL INDEMNITY COMPANY

SAFEGUARD INSURANCE COMPANY

STANDARD MARINE INSURANCE COMPANY, LIMITED (U. S. BRANCH)

THAMES AND MERSEY MARINE INSURANCE COMPANY, LIMITED (U. S. BRANCH)

(hereinafter either individually or collectively called the "Group")

by

## CERTAIN INSURANCE COMPANIES
each for its own part and not one for the other
(hereinafter called the "Reinsurers")

IT IS AGREED that effective Midnight December 31, 1967 this Contract is amended as follows:-

1.  Exclusion 3 of ARTICLE 2 is amended to read as follows.

    "Pools, Associations and Syndicates (as per rider attached hereto)."

2.  Exclusion 5 of ARTICLE 2 is amended to read as follows:

    "Liability in respect of excess of loss reinsurance. This exclusion does not apply to any such reinsurance effected between any of the Companies reinsured here-under.  Moreover, liability accepted by way of pro rata reinsurance in respect of excess of loss insurance shall not be excluded herefrom and with respect to Casualty business reinsurances written on an excess of loss basis on specific risks shall not be considered excess of loss reinsurance for the purposes of this Contract."

3.  With respect to Exclusion 7 of ARTICLE 2, the "Nuclear Incident Exclusion Clause - Liability - Reinsurance" which was attached to and forming a part of this Con-tract is hereby deleted and replaced by the revised "Nuclear Incident Exclusion Clause - Liability - Rein-surance" attached to this Endorsement.

4.  Exclusion 11 of ARTICLE 2 is deleted entirely.  In consequence thereof remaining Exclusions numbered 12 and 13 are hereby renumbered to read 11 and 12, re-spectively

5.  Paragraph 1 of ARTICLE 6 is amended to read as follows:

    "1.  This Contract shall take effect at January 1, 1967 and shall remain in force for an indefinite period but may be terminated at any Midnight, December 31st by either party giving to the other six month's prior notice.  However, notwithstanding the foregoing the [illegible] shall have the option to have the anniversary date of this Contract amended as of July 1, 1968 and have it endorsed or rewritten to [illegible] as [illegible]

- 2 -

6. Paragraph 1. B. (b) of ARTICLE 6 is amended to read as follows:

"Riot, Riot attending Strike, Civil Commotion, Vandalism and Malicious Mischief:

all losses from these perils including losses from all other perils covered hereunder following as a result of losses caused as a result of the afore-said perils sustained by the Group during a con-tinuous period of 72 hours within the area of one principal municipality or county and the municipal-ities or counties contiguous thereto.

The Group may elect the moment from which each such period of 72 hours shall commence but not earlier than the time of the occurrence of the first recorded loss to the Group.  However, no two 72 hour periods in respect of the same area as defined above shall overlap."

7. Paragraph 1. B. (d) of ARTICLE 6 is amended to read as follows:

"It is agreed that the Group may elect the moment from which any of the 72 hour periods specified in sub-paragraphs (a) and (c) above shall be deemed to have commenced, but no two such periods in respect of the same accident, disaster, casualty or occurrence shall overlap and no such period shall commence prior to the time of the first loss sustained by the Group as a result of the respective loss occurrence."

8. Regarding the reinsurance to be maintained in ARTICLE 9 under Section 1. Ocean Marine, Cargo, Special Surplus, the limits are amended to read:

"Special Surplus - $1,000,000 warehouse
$1,000,000 ocean"

9. Paragraph 1. of ARTICLE 11 is amended to read as follows:

'The premium to be paid to the Reinsurers shall be 67½% of the Gross Net Earned Premium Income of the Group during the term of this Contract.'

10. The Minimum Annual Premium applicable to this Contract for the annual period January 1, 1968 through December 31, 1968 shall be $2,531,250.

- 3 -

Notwithstanding anything contained in this Contract or in the forms attached thereto to the contrary, it is hereby understood and agreed that effective Midnight, December 31, 1967 Reinsurers' proportion hereunder as stated in ARTICLE 22 is amended to read:

"for   nine decimal nine nine five per cent (   9.995%   )

part of One Hundred Per Cent (100%)"

All other terms and conditions of this Contract remain unchanged.

IN WITNESS WHEREOF, this Endorsement for the proportion stated in ARTICLE 22 is signed, in duplicate, for and on behalf of the Reinsurer named below in                    on or as of the                    day of
          1968.

_____
                    Company

By: ___CERTAIN INSURANCE COMPANIES___
                    Title:
     as fully set out in the schedule
     attached hereto.

SIGNED, in LONDON, this 3ᵗᵈ day of *January* 1967.

In witness whereof I being a representative of the Leading Office which is duly authorised by the Reinsurers have hereunto subscribed my name on their behalf.

JAL/HDM

POOLS, ASSOCIATIONS AND SYNDICATES
EXCLUSION CLAUSE
(For attachment to Catastrophe Reinsurance Contracts)

SECTION A  (effective as respects losses occurring at and after 12:01 a.m., January 1, 1968
or at and after the inception date of this Contract, whichever is later.)

Excluding:

(a) All business derived directly or indirectly from any Pool, Association or Syndicate
which maintains its own reinsurance facilities.

(b) Watts Pool.

(c) "Brush Fire" Pools.

(d) Any Pool or Scheme (whether voluntary or mandatory) formed after March 1, 1968
for the purpose of insuring Property whether on a country-wide basis or in respect
of designated areas.

It is agreed that losses, other than those resulting from riots and civil disorders, aris-
ing from participation in Fair Plans or similar arrangements shall not be excluded from the pro-
tection afforded by this Contract.

SECTION B  (effective as respects business attaching on and after 12:01 a.m., March 1, 1968
or on and after the inception date of this Contract, whichever is later.)

It is agreed that business written by the Reassured for the same perils, which is known
at the time to be insured by, or in excess of underlying amounts placed in the following Pools,
Associations or Syndicates, whether by way of insurance or reinsurance is excluded hereunder.

Factory Insurance Association, including Underwriters Grain Division, Associated
Factory Mutuals, Improved Risk Mutuals.

Oil Insurance Association and any similar Pool, Association or Syndicate formed for
the purpose of writing Oil, Gas or Petro-Chemical Plants and/or Oil or Gas Drilling
Rigs.

Nuclear Energy Property Insurance Association, Nuclear Energy Liability Insurance
Association, Mutual Atomic Energy Reinsurance Pool, Mutual Atomic Energy Liability
Underwriters.

United States Aircraft Insurance Group, Canadian Aircraft Insurance Group, Associ-
ated Aviation Underwriters, American Aviation Underwriters.

Section B does not apply:

(a) Where the Total Insured Value over all interests of the risk in question is less
than $25,000,000.

(b) To interests traditionally underwritten as Inland Marine or Stock and/or Contents
written on a Blanket basis.

(c) To Contingent Business Interruption, except when the Reassured is aware that the
key location is known at the time to be insured in any Pool, Association or Syn-
dicate named above.

NOTES: Wherever used herein the terms:
"Reassured" shall be understood to mean "Company", "Reinsured", "Reassured"
or whatever other term is used in the attached reinsurance contract to designate
the reinsured company.
"Contract" shall be understood to mean "Contract", "Agreement", "Policy" or what-
ever other term is used to designate the attached reinsurance document.

Catas.-10/68-2000

NUCLEAR INCIDENT EXCLUSION CLAUSE—LIABILITY—REINSURANCE—U.S.A.

(1) This Contract does not cover any loss or liability accruing to the Reassured as a member of, or subscriber to, any association of insurers or reinsurers formed for the purpose of covering nuclear energy risks or as a direct or indirect reinsurer of any such member, subscriber or association.

(2) Without in any way restricting the operation of paragraph (1) of this Clause it is understood and agreed that for all purposes of this Contract all the original policies of the Reassured (new, renewal and replacement) of the classes specified in Clause II of this paragraph (2) from the time specified in Clause III in this paragraph (2) shall be deemed to include the following provision (specified as the Limited Exclusion Provision):

Limited Exclusion Provision.*

I.  It is agreed that the policy does not apply under any liability coverage,
    to { injury, sickness, disease, death or destruction
        { bodily injury or property damage      with respect to which an insured under the policy is also
    an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association,
    Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an
    insured under any such policy but for its termination upon exhaustion of its limit of liability.

II. Family Automobile Policies (liability only), Special Automobile Policies (private passenger automobiles, liability
    only), Farmers Comprehensive Personal Liability Policies (liability only), Comprehensive Personal Liability
    Policies (liability only) or policies of a similar nature; and the liability portion of combination forms related to
    the four classes of policies stated above, such as the Comprehensive Dwelling Policy and the applicable types
    of Homeowners Policies.

III. The inception dates and thereafter of all original policies as described in II above, whether new, renewal or
     replacement, being policies which either
        (a)  become effective on or after 1st May, 1960, or
        (b)  became effective before that date and contain the Limited Exclusion Provision set out above;
     provided this paragraph (2) shall not be applicable to Family Automobile Policies, Special Automobile Policies,
     or policies or combination policies of a similar nature, issued by the Reassured on New York risks, until 90
     days following approval of the Limited Exclusion Provision by the Governmental Authority having jurisdic-
     tion thereof.

(3) Except for those classes of policies specified in Clause II of paragraph (2) and without in any way restricting the operation of paragraph (1) of this Clause, it is understood and agreed that for all purposes of this Contract the original liability policies of the Reassured (new, renewal and replacement) affording the following coverages:

    Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors
    (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional
    and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability (including Massachusetts
    Motor Vehicle or Garage Liability)

shall be deemed to include, with respect to such coverages, from the time specified in Clause V of this paragraph (3), the following provision (specified as the Broad Exclusion Provision):

Broad Exclusion Provision.*

It is agreed that the policy does not apply:

I.  Under any Liability Coverage, to { injury, sickness, disease, death or destruction
                                      { bodily injury or property damage
        (a)  with respect to which an insured under the policy is also an insured under a nuclear energy liability
             policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability
             Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such
             policy but for its termination upon exhaustion of its limit of liability; or
        (b)  resulting from the hazardous properties of nuclear material and with respect to which (1) any person
             or organization is required to maintain financial protection pursuant to the Atomic Energy Act of
             1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would
             be, entitled to indemnity from the United States of America, or any agency thereof, under any
             agreement entered into by the United States of America, or any agency thereof, with any person or
             organization.

II. Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating
    to { immediate medical or surgical relief,
       { first aid,                            to expenses incurred with respect
    to { bodily injury, sickness, disease or death
       { bodily injury                         resulting from the hazardous properties of nuclear material
    and arising out of the operation of a nuclear facility by any person or organization.

III. Under any Liability Coverage,
     to { injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if
        { bodily injury or property damage
        (a)  the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured
             or (2) has been discharged or dispersed therefrom;
        (b)  the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, pro-
             cessed, stored, transported or disposed of by or on behalf of an insured; or
        (c)  the { injury, sickness, disease, death or destruction
                 { bodily injury or property damage      arises out of the furnishing by an insured of
             services, materials, parts or equipment in connection with the planning, construction, maintenance,
             operation or use of any nuclear facility, but if such facility is located within the United States of
             America, its territories or possessions or Canada, this exclusion (c) applies only
             to { injury to or destruction of property at such nuclear facility.
                { property damage to such nuclear facility and any property thereat.

                                                            continued overleaf.

Notwithstanding anything contained in this Contract or in the forms attached thereto to the contrary, it is hereby understood and agreed that effective Midnight, December 31, 1967 Reinsurers' proportion hereunder as stated in ARTICLE 22 is amended to read:

        "for decimal one             per cent (      .1%      )

        part of One Hundred Per Cent (100%)"

All other terms and conditions of this Contract remain unchanged.

IN WITNESS WHEREOF, this Endorsement for the proportion stated in ARTICLE 22 is signed, in duplicate, for and on behalf of the Reinsurer named below in Paris on or as of the 3rd day of February 1968.

- 4 -

Notwithstanding anything contained in this Contract or in the forms attached thereto to the contrary, it is hereby understood and agreed that effective Midnight, December 31, 1967 Reinsurers' proportion hereunder as stated in ARTICLE 22 is amended to read:

"for decimal one_____per cent (    0,1%        )

part of One Hundred Per Cent (100%)"

All other terms and conditions of this Contract remain unchanged.

IN WITNESS WHEREOF, this Endorsement for the proportion stated in ARTICLE 22 is signed, in duplicate, for and on behalf of the Reinsurer named below
on or as of the *eleventh* day of *February 1969*

- 4 -

Notwithstanding anything contained in this Contract or in the forms attached thereto to the contrary, it is hereby understood and agreed that effective Midnight, December 31, 1967 Reinsurers' proportion hereunder as stated in ARTICLE 22 is amended to read:

        "for decimal one               per cent (    .1%    )

        part of One Hundred Per Cent (100%)"

All other terms and conditions of this Contract remain unchanged.

IN WITNESS WHEREOF, this Endorsement for the proportion stated in ARTICLE 22 is signed, in duplicate, for and on behalf of the Reinsurer named below in *Paris* on or as of the *sixth* day of *January* 1968.

- 4 -

Notwithstanding anything contained in this Contract or in the forms attached thereto to the contrary, it is hereby understood and agreed that effective Midnight, December 31, 1967 Reinsurers' proportion hereunder as stated in ARTICLE 22 is amended to read:

"_____ per cent ( .1%

"for decimal one _____

part of One Hundred Per Cent (100%)"

All other terms and conditions of this Contract remain unchanged.

IN WITNESS WHEREOF, this Endorsement for the proportion stated in is signed, in duplicate, for and on behalf of the Reinsurer named
on or as of the
1968.

- 4 -

## TARGET RISKS EXCLUSION CLAUSE.

No liability shall attach hereto in respect of the following risks and/or other risks as may hereafter by mutual agreement be included by endorsement hereto and no liability in respect of such risks shall be included in the retention warranted hereon or in the amount of loss in excess of which this Contract attaches:—

| | |
|---|---|
| George Washington Bridge ... ... ... ... ... | A/c Port of New York Authority. |
| Holland Tunnel ... ... ... ... ... | A/c Port of New York Authority. |
| Lincoln Tunnel (Midtown Tunnel) ... | A/c Port of New York Authority. |
| San Francisco Oakland Bay Bridge ... | A/c California Toll Bridge Authority. |
| Golden Gate Bridge ... ... ... | A/c Golden Gate Bridge & Highway District. |
| Mellon Collection of Fine Arts ... | A/c A. W. Mellon Educational & Charitable Trust, Washington. |
| Frick Collection of Fine Arts ... ... | A/c Trustees of the Frick Collection, Inc., 1, East 70th Street, New York, N.Y. |
| Bronx-Whitestone Bridge ... | A/c Triborough Bridge & Tunnel Authority, New York, N.Y. |
| Queens Midtown Tunnel ... | A/c Triborough Bridge & Tunnel Authority, New York, N.Y. |
| Mississippi River Bridge at New Orleans (otherwise known as the Huey P. Long Bridge). | A/c Public Belt Railroad Commission of the City of New Orleans. |
| Tacoma Narrows Bridge ... | A/c Washington Toll Bridge Authority, Washington. |
| Property Damage Coverage on East River Crossing Section of the Triborough Bridge | A/c Triborough Bridge & Tunnel Authority, New York, N.Y. |
| Harlem River Crossing and Steel Structure of Manhattan Approach of the Triborough Bridge | A/c Triborough Bridge & Tunnel Authority, New York, N.Y. |
| Use and Occupancy of whole Triborough Bridge structure | A/c Triborough Bridge & Tunnel Authority, New York, N.Y. |
| Delaware Memorial Bridge (including Builders' Risk) ... | A/c All Parties in interest. |
| Mystic River Bridge (including Builders' Risk) ... | A/c All Parties in interest. |
| Brooklyn Battery Tunnel (including Use and Occupancy) ... | A/c Triborough Bridge & Tunnel Authority, New York, N.Y. |
| Chesapeake Bay Bridge (including Builders' Risk and Use and Occupancy) | A/c Baltimore National Bank, Trustee, State of Maryland and State Roads Commission, as their respective interests may appear. |
| Benjamin Franklin Bridge (Property Damage and Use and Occupancy) | A/c Delaware River Port Authority of Pennsylvania and New Jersey. |
| Third Tube of the Lincoln Tunnel (including Builders' Risk) ... ... ... ... | A/c Port of New York Authority and/or Contractors. |
| Richmond—San Rafael Bridge (including Builders' Risk and Use and Occupancy) | A/c California Toll Bridge Authority and/or Contractors. |
| Mackinac Straits Bridge (including Builders' Risks) | A/c Mackinac Bridge Authority and/or Contractors. |
| Tappan Zee Bridge (including Use and Occupancy) | A/c New York State Thruway Authority, New York. |
| Walt Whitman Bridge (including Use and Occupancy) ... | A/c Delaware River Port Authority. |
| Patapsco Tunnel Project (also known as the Baltimore Harbour Tunnel) (including Use and Occupancy) ... | A/c Baltimore National Bank, Trustee, State of Maryland and State Roads Commission, as their respective interests may appear. |
| The Greater New Orleans Bridge (including Use and Occupancy) | A/c The Mississippi River Bridge Authority, owner, and the National Bank of Commerce in New Orleans, Trustee, as their interest shall appear. |
| Throgs Neck Bridge (including Builders' Risk and Use and Occupancy) | A/c Triborough Bridge and Tunnel Authority, New York, N.Y. |
| Carquinez Strait Bridge (including Use and Occupancy) | A/c The State of California. |
| Verrazano Narrows Bridge (including Builders Risks and Use and Occupancy) ... ... ... | A/c Triborough Bridge & Tunnel Authority, New York, and/or Contractors and/or Sub-Contractors |
| San Mateo-Hayward Bridge including Use and Occupancy) | A/c California Toll Bridge Authority |
| New York World's Fair Fine Arts Syndicate | |
| Chesapeake Bay Bridge-Tunnel (including Use and Occupancy) | |
| Second Delaware Memorial Bridge Structure | |
| | A/c Chesapeake Bay Bridge and Tunnel District, Virginia. |
| | A/c Delaware River & Bay Authority & Contractors, with respect to work each is performing as their interests may appear. |
| East ... ssage Crossing of Narragansett Bay | A/c Rhode Island Turnpike and Bridge Authority. |

**NUCLEAR INCIDENT EXCLUSION CLAUSE—PHYSICAL DAMAGE—REINSURANCE—U.S.A.**

1.  This Contract does not cover any loss or liability accruing to the Reassured, directly or indirectly and whether as Insurer or Reinsurer, from any Pool of Insurers or Reinsurers formed for the purpose of covering Atomic or Nuclear Energy risks.

2.  Without in any way restricting the operation of paragraph (1) of this Clause, this Contract does not cover any loss or liability accruing to the Reassured, directly or indirectly and whether as Insurer or Reinsurer, from any insurance against Physical Damage (including business interruption or consequential loss arising out of such Physical Damage) to:

    I.  Nuclear reactor power plants including all auxiliary property on the site, or

    II.  Any other nuclear reactor installation, including laboratories handling radioactive materials in connection with reactor installations, and " critical facilities " as such, or

    III.  Installations for fabricating complete fuel elements or for processing substantial quantities of " special nuclear material ", and for reprocessing, salvaging, chemically separating, storing or disposing of " spent " nuclear fuel or waste materials, or

    IV.  Installations other than those listed in paragraph (2) III above using substantial quantities of radioactive isotopes or other products of nuclear fission.

3.  Without in any way restricting the operations of paragraphs (1) and (2) hereof, this Contract does not cover any loss or liability by radioactive contamination accruing to the Reassured, directly or indirectly, and whether as Insurer or Reinsurer, from any insurance on property which is on the same site as a nuclear reactor power plant or other nuclear installation and which normally would be insured therewith except that this paragraph (3) shall not operate

    (a)  where the Reassured does not have knowledge of such nuclear reactor power plant or nuclear installation, or

    (b)  where said insurance contains a provision excluding coverage for damage to property caused by or resulting from radioactive contamination, however caused. However on and after 1st January 1960 this sub-paragraph (b) shall only apply provided the said radio-active contamination exclusion provision has been approved by the Governmental Authority having jurisdiction thereof.

4.  Without in any way restricting the operations of paragraphs (1), (2) and (3) hereof, this Contract does not cover any loss or liability by radioactive contamination accruing to the Reassured, directly or indirectly, and whether as Insurer or Reinsurer, when such radioactive contamination is a named hazard specifically insured against.

5.  It is understood and agreed that this Clause shall not extend to risks using radioactive isotopes in any form where the nuclear exposure is not considered by the Reassured to be the primary hazard.

6.  The term " special nuclear material " shall have the meaning given it in the Atomic Energy Act of 1954 or by any law amendatory thereof.

7.  The Reassured to be sole judge of what constitutes:

    (a)  substantial quantities, and

    (b)  the extent of installation, plant or site.

*Note.*—Without in any way restricting the operation of paragraph (1) hereof, it is understood and agreed that

    (a)  all policies issued by the Reassured on or before 31st December 1957 shall be free from the application of the other provisions of this Clause until expiry date or 31st December 1960 whichever first occurs whereupon all the provisions of this Clause shall apply.

    (b)  with respect to any risk located in Canada policies issued by the Reassured on or before 31st December 1958 shall be free from the application of the other provisions of this Clause until expiry date or 31st December 1960 whichever first occurs whereupon all the provisions of this Clause shall apply.

N.M.A. 1119
12/12/57



# DUPLICATE

ENDORSEMENT NO. 2.

to

## BLANKET FIRST EXCESS OF LOSS COVER

### CONTRACT OF REINSURANCE

issued to

ROYAL INSURANCE COMPANY, LIMITED (U.S. BRANCH)
AMERICAN AND FOREIGN INSURANCE COMPANY
THE BRITISH AND FOREIGN MARINE INSURANCE COMPANY LIMITED (U.S. BRANCH)
GLOBE INDEMNITY COMPANY
THE LIVERPOOL & LONDON & GLOBE INSURANCE COMPANY LIMITED (U.S. BRANCH)
THE LONDON AND LANCASHIRE INSURANCE COMPANY, LIMITED (U.S. BRANCH)
THE MARINE INSURANCE COMPANY, LIMITED (U.S. BRANCH)
NEWARK INSURANCE COMPANY
QUEEN INSURANCE COMPANY OF AMERICA
ROYAL INDEMNITY INSURANCE COMPANY
SAFEGUARD INSURANCE COMPANY
STANDARD MARINE INSURANCE COMPANY, LIMITED (U.S. BRANCH)
THAMES AND MERSEY MARINE INSURANCE COMPANY, LIMITED (U.S. BRANCH)

(hereinafter either individually or collectively called the "Group")

by

CERTAIN INSURANCE COMPANIES
(each for its own part and not one for the other)
(hereinafter called the "Reinsurers")

IT IS AGREED that effective 12:01 a.m., January 1, 1969 this Contract is terminated in accordance with the provisions of Article 4 (Term and Cancellation).

All other terms and conditions of this Contract remain unchanged.

IN WITNESS WHEREOF, this Endorsement for the proportion stated in Article 22 is signed, in duplicate, for and on behalf of the Reinsurer named below in                                    on or as of the            day of                        1969.

Certain Insurance Companies
as defined in the Schedule Attached hereto.

In witness whereof I being a representative of the Leading
Office which is duly authorised by the Reinsurers have
hereunto subscribed my name on their behalf.

Exhibit

2

COPY

C.N. 12935

CONTRACT OF REINSURANCE

issued to

ROYAL INSURANCE COMPANY, LIMITED (U.S. BRANCH)

AMERICAN AND FOREIGN INSURANCE COMPANY

THE BRITISH AND FOREIGN MARINE INSURANCE COMPANY LIMITED
(U.S. BRANCH)

GLOBE INDEMNITY COMPANY

THE LIVERPOOL & LONDON & GLOBE INSURANCE COMPANY
LIMITED (U.S. BRANCH)

THE LONDON AND LANCASHIRE INSURANCE COMPANY, LIMITED
(U.S. BRANCH)

THE MARINE INSURANCE COMPANY, LIMITED (U.S. BRANCH)

NEWARK INSURANCE COMPANY

QUEEN INSURANCE COMPANY OF AMERICA

ROYAL INDEMNITY COMPANY

SAFEGUARD INSURANCE COMPANY

STANDARD MARINE INSURANCE COMPANY, LIMITED (U.S. BRANCH)

THAMES AND MERSEY MARINE INSURANCE COMPANY, LIMITED
(U.S. BRANCH)

(hereinafter either individually or collectively called the 'Group')

by
CERTAIN INSURANCE COMPANIES
each for its own part and not one for the other

(hereinafter called the 'Reinsurers')

- 1 -

# CONTINGENCY FIRST EXCESS OF LOSS COVER

Whenever the term 'Group' is used in this Contract, same shall be held to include any and/or all subsidiary Companies, which are or may hereafter be under the management of the Group provided, however, that immediate notice be given to the Reinsurers of any such subsidiary Companies which may hereafter come under the management of the Group prior to any risk attaching hereunder, with full particulars as to how such acquisition is likely to affect this Contract. In the event of either party maintaining that such acquisition calls for alterations in existing terms and an agreement not being arrived at, then the business of such acquired Company is covered only for a period of forty-five days after notice to the Group that the Reinsurers do not wish to cover the business so acquired.

## ARTICLE 1

## BUSINESS COVERED

For and in consideration of the premiums to be paid by the Group to the Reinsurers as herein provided the Reinsurers agree to fully indemnify the Group as set forth in Article 5 herein in respect of the excess liability which may accrue to the Group under all policies, bonds, binders, contracts of Insurance or Reinsurance, Co-Insurance or Co-Indemnity, oral or written, or other evidences of liability (hereinafter referred to as 'policy' or 'policies' and/or 'bond' or 'bonds') classified by the Group as (including such business under Multi-Peril Package Policies):

(a) Workmen's Compensation, Employers' Liability and Voluntary Compensation, all including Occupational Disease.

(b) All Bodily and Personal Injury Liability.

(c) All Property Damage Liability classified as Casualty.

(d) Fidelity and Forgery.

(e) Burglary and Theft.

(f) Boiler and Machinery.

- 2 -

C.N. 12935

issued or contracted for by the Group covering anywhere in the World subject to the exclusions set forth in Article 2 and the other terms and conditions of this Contract as set forth herein.

## ARTICLE 2

### EXCLUSIONS

Notwithstanding anything to the contrary contained herein, it is specially agreed that this Contract does not apply to but specifically excludes:-

1. Policies covering Workmen's Compensation, General Liability and Automobile Liability business under which the Group receives complete reimbursement for losses and expenses thereunder.

2. Liability assumed by the Group as a member of any Pool, Association, Exchange or similar body.

3. Financial Guarantee and Insolvency. However, the liability of the Group under any bond covering losses due to negligence of any person or failure of any person to faithfully perform his duty or failure to account for and pay over money or other property in his custody, shall not be considered Financial Guarantee or Insolvency even though the Group is required to pay such loss because of the insolvency of such person or because of the insolvency of a financial institution in which he has deposited money.

4. Liability in respect of excess of loss reinsurance. This exclusion does not apply to any such reinsurance effected between any of the Companies reinsured hereunder or assumed from the Hawaiian Insurance and Guaranty Company, Ltd. Moreover, liability accepted by way of pro rata reinsurance in respect of excess of loss insurance shall not be excluded herefrom and with respect to Casualty business reinsurances written on an excess of loss basis on specific risks shall not be considered excess of loss reinsurance for the purposes of this Contract.

5. Nuclear Incident -

  (a) Liability - Reinsurance
  (b) Boiler and Machinery - Reinsurance

  as per riders attached.

C.N. 12935                                    - 3 -

6. Loss or damage accruing to the Group, directly or indirectly, whether as an insurer or reinsurer, from any pool of insurers or reinsurers formed for the purpose of covering Atomic or Nuclear Energy risks.

7. All business of the Excess and Casualty Reinsurance Association, whether assumed directly or indirectly by the Group.

## ARTICLE 3

SELF-INSURED OBLIGATIONS

1.   As respects all business the subject matter hereof, this Contract shall cover all obligations of the Group assumed by it as a self-insurer (or self-insured obligations in excess of any valid and collectible insurance available to the Group) to the same extent as if all types of insurance covered by this Contract were afforded under the broadest form of agreements issued by the Group.

2.   An insurance or reinsurance wherein the Group hereby reinsured and/or its affiliated and/or subsidiary companies are named as the Insured or Reinsured party, either alone or jointly with some other party, shall be deemed to be an insurance or reinsurance coming within the scope of this Contract, notwithstanding that no legal liability may arise in respect thereof by reason of the fact that the Group hereby reinsured and/or its affiliated and/or subsidiary companies are named as the Insured or Reinsured party or one of the Insured or Reinsured parties.

## ARTICLE 4

TERM  AND  CANCELLATION

1.   This Contract shall take effect at January 1, 1967 and shall remain in force for an indefinite period but may be terminated at any Midnight, December 31st by either party giving to the other six months' prior notice.

2.   If any law or regulation of the Federal or State or Local Government of any jurisdiction in which the Group is doing business shall render illegal the arrangements made in this Contract, the Contract can be terminated immediately, insofar as it applies to such jurisdiction, by the Group giving notice to the Reinsurers to such effect.

- 4 -

C.N. 12935

3.    With respect to all business covered hereunder except Fidelity and Burglary this Contract shall apply to accidents, casualties, disasters and occurrences taking place during the term this Contract is in force.

4.    With respect to Fidelity and Burglary business, this Contract shall apply to occurrences discovered during the time this Contract is in force (irrespective of when such occurrences are sustained under the original policies or bonds).

5.    If this Contract shall terminate while a loss covered hereunder is in progress, it is agreed that, subject to the other conditions of this Contract, the Reinsurers shall indemnify the Group as if the entire loss had occurred during the term of this Contract, provided the loss covered hereunder started before the time of termination.

ARTICLE 5

INSURING CLAUSE

Subject to the general conditions set forth in this Contract no claim to be paid for any loss under this Contract unless the Group has paid or advanced or agreed to pay or advance or becomes liable to pay to or on behalf of its Insured or Reinsured on account of loss by any one accident, disaster, casualty or occurrence an amount exceeding $30,000,000, and the sum recoverable under this Contract shall be 100% of the amount the excess of $30,000,000 ultimate net loss in respect of each and every loss sustained by the Group, but such sum recoverable shall not exceed a further $15,000,000 in respect of any one such accident, disaster, casualty or occurrence.

With the exception of Boiler and Machinery business it is agreed that no liability shall attach under this Contract unless two or more policies or classes are involved in a loss resulting from any one accident, disaster, casualty or occurrence.

It is agreed that in the event of a loss resulting from an accident, disaster, casualty or occurrence involving business covered hereunder and other business covered under the Group's underlying blanket First, Second and Third Excess of Loss Covers that portion of the loss attributable to such other business may be included up to a maximum of $30,000,000 in determining the ultimate net loss under this Contract.

- 5 -

ARTICLE 6

GENERAL CONDITIONS

A.   It is agreed that recoveries under the Blanket First, Second and
Third Excess of Loss Covers shall be disregarded for the purpose
of calculating the ultimate net loss under this Contract and such
recoveries shall inure to the sole benefit of the Group.

B.   With respect to Third Party Liability insurance of any kind this
Contract shall protect the Group, within the limits hereof, in
connection with any loss for which the Group may be legally liable
to pay in excess of the limit of its original policy, such loss in
excess of the limit having been incurred because of failure by it
to settle within the policy limit or by reason of alleged or actual
negligence, fraud or bad faith in rejecting an offer of settlement
or in the preparation of the defence or in the trial of any action
against its Insured or Reinsured or in the preparation or pro-
secution of an appeal consequent upon such action.

ARTICLE 7

DEFINITIONS

A.   Subject to the exception listed below in paragraph B the terms
'accident', disaster', 'casualty', or 'occurrence' as used in this Contract
shall be deemed and construed to mean any one, or more than one,
accident, disaster or occurrence arising or resulting from one event
upon which liability is predicated under any one, or more than one, of the
policies covered by this Contract, and, as respects liability arising out
of products manufactured, made, handled, distributed or sold by an
assured, liability arising out of property damage or out of malpractice,
said term shall also be deemed and construed to mean any one, or more
than one, accident, happening or occurrence which the available evidence
shows to be the probable common cause or causes of more than one claim
under a policy, or policies, or renewals thereof, irrespective of the time
of the presentation of such claims to the assured or the Group, but this
Contract does not cover any claim or claims arising from a common
cause, which are not first advised during the period of this Contract.

B.   In respect of business classified by the Group as Fidelity the
terms 'accident', 'disaster', 'casualty' or 'occurrence' shall mean

- 6 -

C.N. 12935

(a) any loss or series of losses whether covered under one or more bonds resulting from acts or omissions of any one person or in which such person is concerned or implicated, or

(b) any loss or losses, other than as specified in (a), and whether covered under one or more bonds, resulting from any one casualty or event.

It is further agreed that any definition of a single loss occurrence or contingency under any bond covered by this Contract which is in conflict with (a) or (b) above shall not apply.

## ARTICLE 8

### ULTIMATE NET LOSS

1.   The term 'Ultimate Net Loss' shall be understood to mean the actual loss or losses sustained by the Group under its policies, such loss or losses to include expenses of litigation, if any, and all other loss expenses of the Group (excluding general office overhead and salaries of its officials and regular employees but including the pro rata share of salaries and expenses of the Group's outside employees according to the time occupied in adjusting such loss and also including expenses of the Group's officials incurred in connection with the loss but such inclusion shall not apply to salaries of the Group's officials or any normal overhead charges) but salvages and any other recoveries, including recoveries under all reinsurances (except as provided in Article 6) are first to be deducted from such loss to arrive at the amount of liability, if any, attaching hereunder. Nothing in this clause, however, shall be construed as meaning that losses are not recoverable hereunder until the ultimate net loss to the Group has been ascertained.

2.   All salvages, recoveries and payments recovered or received subsequent to a loss settlement under this Contract shall be applied as if recovered or received prior to the said settlement and all necessary adjustments shall be made by the parties hereto.

3.   Whenever the Group issues a lost instrument bond or a lost instrument letter of indemnity, for salvage purposes or in lieu of loss payment under its bond or policy, Reinsurers agree to accept liability under such bond or letter of indemnity in accordance with the terms of this Contract.

- 7 -

C.N. 12935

## ARTICLE 9

NET RETAINED LINES

1.    Except as otherwise provided in Article 8 this Contract applies only to that portion of any Insurance or Reinsurance which the Group retains net for its own account, and in calculating the amount of any loss hereunder and also in computing the amount or amounts in excess of which this Contract attaches, only loss or losses in respect of that portion of any Insurance or Reinsurance which the Group retains net for its own account shall be included.

2.    The amount of Reinsurers' liability hereunder in respect of any loss or losses shall not be increased by reason of the inability of the Group to collect from any other Reinsurers whether specific or general, any amounts which may have become due from them whether such inability arises from the insolvency of such other Reinsurers or otherwise.

## ARTICLE 10

REINSTATEMENT

In the event of the whole or any portion of the indemnity under this Contract being exhausted by loss, the amount so exhausted shall be automatically reinstated from the time of the occurrence of the loss (or from the time of discovery of the loss in respect of Fidelity and Burglary business) without payment of additional premium. Nevertheless the Reinsurers' liability in any one accident, disaster, casualty or occurrence shall never exceed $15,000,000.

## ARTICLE 11

PREMIUM

The premium to be paid to the Reinsurers shall be $25,000 annually payable each January 1st during the term of this Contract.

## ARTICLE 12

NOTICE OF LOSS AND LOSS SETTLEMENTS

1.    In the event of an accident, disaster, casualty or occurrence

- 8 -

C.N. 12935

occurring which either results in or appears to be of serious enough nature as probably to result in a loss involving this Contract the Group shall give notice as soon as reasonably practicable to Reinsurers through Guy Carpenter & Company, Inc., 110 William Street, New York, New York 10038.

2.   The Reinsurers agree to abide by the loss settlements of the Group, such settlements to be considered as satisfactory proofs of loss, and amounts falling to the share of the Reinsurers shall be immediately payable to the Group by them upon reasonable evidence of the amount paid by the Group being presented to Reinsurers through Guy Carpenter & Company, Inc., by the Group. All papers in the possession of the Group in connection with the adjustment of said loss shall at all times within a reasonable period be open to the inspection of a properly authorised representative of the Reinsurers.

<u>ARTICLE 13</u>

LOSS RESERVES (Applies only to Reinsurers domiciled outside of the United States)

1.   As regards policies issued by the Group coming within the scope of this Contract, the Group agrees that when it shall file with the Insurance Department or set up on its books reserves for losses which it shall be required to set up by law it will forward to the Reinsurers a statement showing the proportion of such loss reserves which is applicable to them. The Reinsurers hereby agree that they will apply for and secure delivery to the Group a clean irrevocable Letter of Credit issued by First National City Bank of New York in an amount equal to Reinsurers' proportion of said loss reserves.

2.   The Group undertakes to use and apply any amounts which it may draw upon such Credit for the following purposes only:-

      (a) To pay the Reinsurers' share or to reimburse the Group for the Reinsurers' share of any liability for loss reinsured by this reinsurance Contract, each withdrawal to be debited on the Group's records to the Loss Reserve Account Fund established for such liability, as hereinbefore provided.

      (b) To make refund of any sum which is in excess of the actual amount required to pay Reinsurers' share of any liability reinsured by this reinsurance Contract.

- 9 -

C.N. 12935

3.    First National City Bank of New York shall have no responsibility whatsoever in connection with the propriety of withdrawals made by the Group or the disposition of funds withdrawn, except to see that withdrawals are made only upon the order of properly authorized representatives of the Group.

## ARTICLE 14

### REINSURANCE TAX

In consideration of the terms under which this Contract is issued, the Group undertakes not to claim any deduction of the premium hereon when making Canadian tax returns or when making tax returns, other than Income or Profits Tax returns, to any State or Territory of the United States of America or to the District of Columbia.

### FEDERAL EXCISE TAX (Applies only to those Reinsurers unlicenced in the U.S.A.)

1.    The Reinsurers have agreed to allow for the purpose of paying the Federal Excise Tax, one per cent of the premium payable hereon to the extent such premium is subject to Federal Excise Tax.

2.    It is understood and agreed that in the event of any return of premium becoming due hereunder the Reinsurers will deduct one per cent from the amount of the return and the Group or its agent should take steps to recover the tax from the U.S. Government.

## ARTICLE 15

### CURRENCY

1.    Wherever the word 'Dollars' and the sign '$' appear in this Contract they shall be construed to mean United States Dollars, excepting in those cases where the policies are issued by the Group in Canadian Dollars in which case they shall mean Canadian Dollars.

2.    In the event of the Group being involved in a loss requiring payment in United States and Canadian Currency, the Group's retention and the amount recoverable hereunder shall be apportioned to the two currencies in the same proportion as the amount of ultimate net loss in each currency bears to the total amount of ultimate net loss paid by the Group.

- 10 -

C.N. 12935

3.    For the purposes of this Contract, where the Group receives premiums or pays losses in currencies other than United States or Canadian Currency, such premiums and losses shall be converted into United States Dollars at the actual rates of exchange at which these premiums and losses are entered in the Group's books.

### ARTICLE 16

ACCESS TO RECORDS

The Reinsurers or their duly accredited representatives shall have free access to the books and records of the Group at all reasonable times for the purpose of obtaining information concerning this Contract or the subject matter thereof.

### ARTICLE 17

SERVICE OF SUIT CLAUSE (U.S.A.) (Applies only to those Reinsurers unlicenced in the U.S.A.)

1.    It is agreed that in the event of the failure of Reinsurers hereon to pay any amount claimed to be due hereunder, Reinsurers hereon, at the request of the Group, will submit to the jurisdiction of any Court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court. It is further agreed that service of process in such suit may be made upon Messrs. Mendes and Mount, 27 William Street, New York, N.Y. 10005 and/or their Nominees, and that in any suit instituted against any one of them upon this Contract Reinsurers will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

2.    The above-named are authorised and directed to accept service of process on behalf of Reinsurers in any such suit and/or upon the request of the Group to give a written undertaking to the Group that they will enter a general appearance upon Reinsurers' behalf in the event such a suit shall be instituted. Further pursuant to any statute of any state, territory or district of the United States of America which makes provision therefor, Reinsurers hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on

- 11 -

C.N. 12935

behalf of the Group or any beneficiary hereunder arising out of this Contract, and hereby designate the above-named as the person to whom the said officer is authorised to mail such process or a true copy thereof.

ARTICLE 18

INSOLVENCY

1.    In the event of the insolvency of the Group, this reinsurance shall be payable directly to the Group, or to its liquidator, receiver, conservator or statutory successor on the basis of the liability of the Group without diminution because of the insolvency of the Group or because the liquidator, receiver, conservator or statutory successor of the Group has failed to pay all or a portion of any claim. It is agreed, however, that the liquidator, receiver, conservator or statutory successor of the Group shall give written notice to the Reinsurers of the pendency of a claim against the Group indicating the policy or bond reinsured which claim would involve a possible liability on the part of the Reinsurers within a reasonable time after such claim is filed in the conservation or liquidation proceeding or in the receivership, and that during the pendency of such claim the Reinsurers may investigate such claim and interpose, at their own expense, in the proceeding where such claim is to be adjudicated any defence or defences that they may deem available to the Group or its liquidator, receiver, conservator or statutory successor. The expense thus incurred by the Reinsurers shall be chargeable, subject to the approval of the court, against the Group as part of the expense of conservation or liquidation to the extent of a pro rata share of the benefit which may accrue to the Group solely as a result of the defence undertaken by the Reinsurers.

2.    Where two or more Reinsurers are involved in the same claim and a majority in interest elect to interpose defence to such claim, the expense shall be apportioned in accordance with the terms of the reinsurance agreement as though such expense had been incurred by the Group.

3.    The reinsurance shall be payable by the Reinsurers to the Group or to its liquidator, receiver, conservator or statutory successor, except as provided by Section 315 of the New York Insurance Law or except (a) where the contract specifically provides another payee of such reinsurance in the event of the insolvency of the Group, and (b) where the Reinsurers with the consent of the direct insured or insureds have assumed such policy obligations of the Group as direct obligations of the Reinsurers to the payees under such policies and in substitution for the obligations of the Group to such payees.

- 12-

C.N. 12935

## ARTICLE 19

### ARBITRATION

If any dispute shall arise between the Group and the Reinsurers with reference to the interpretation of this Contract or their rights with respect to any transaction involved, the dispute shall be referred to three arbitrators, one to be chosen by each party and the third by the two so chosen. If either party refuses or neglects to appoint an arbitrator within thirty (30) days after the receipt of written notice from the other party requesting it to do so, the requesting party may nominate two arbitrators, who shall choose the third. Each party shall submit its case to the arbitrators within thirty (30) days of the appointment of the arbitrators. The arbitrators shall consider this Contract an honorable engagement rather than merely a legal obligation; they are relieved of all judicial formalities and may abstain from following the strict rules of law. The decision of a majority of the arbitrators shall be final and binding on both the Group and the Reinsurers. The expense of the arbitrators and of the arbitration shall be equally divided between the Group and the Reinsurers. Any such arbitration shall take place in New York, New York, unless some other location is mutually agreed upon by the Group and the Reinsurers.

## ARTICLE 20

### INTERMEDIARY

Guy Carpenter & Company, Inc. are hereby recognised as the Intermediary negotiating this Contract for all business hereunder except Canadian business, on which Guy Carpenter & Company (Canada) Limited are hereby recognised as the Intermediary. All communications relating thereto shall be transmitted to the Reassured and the Reinsurers through Guy Carpenter & Company, Inc., 110 William Street, New York, N.Y. 10038, (acting in behalf of themselves and Guy Carpenter & Company (Canada) Limited).

C.N. 12935

- 13 -

SIGNED, in LONDON, this                    day of                    1968.

In witness whereof I being a representative of the Leading Office which is duly authorised by the Reinsurers have hereunto subscribed my name on their behalf.

REDACTED

EAGLE STAR INSURANCE COMPANY                                    2.3077%

REDACTED

40.3846%
part of 100% of $13,000,000
part of $15,000,000

C.N. 12935
JAL/db
- 14 -

 

## NUCLEAR INCIDENT EXCLUSION CLAUSE—LIABILITY—REINSURANCE—U.S.A.

(1) This Contract does not cover any loss or liability accruing to the Reassured as a member of, or subscriber to, any association of insurers or reinsurers formed for the purpose of covering nuclear energy risks or as a direct or indirect reinsurer of any such member, subscriber or association.

(2) Without in any way restricting the operation of paragraph (1) of this Clause it is understood and agreed that for all purposes of this Contract all the original policies of the Reassured (new, renewal and replacement) of the classes specified in clause II of this paragraph (2) from the time specified in clause III in this paragraph (2) shall be deemed to include the following provision (specified as the Limited Exclusion Provision):

**Limited Exclusion Provision.**

I.  It is agreed that the policy does not apply under any liability coverage, to injury, sickness, disease, death or destruction with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability.

II.  Family Automobile Policies (liability only), Special Automobile Policies (private passenger automobiles, liability only), Farmers Comprehensive Personal Liability Policies (liability only), Comprehensive Personal Liability Policies (liability only) or policies of a similar nature; and the liability portion of combination forms related to the four classes of policies stated above, such as the Comprehensive Dwelling Policy and the applicable types of Homeowners Policies.

III.  The inception dates and thereafter of all original policies as described in II above, whether new, renewal or replacement, being policies which either
  (a) become effective on or after 1st May, 1960, or
  (b) become effective before that date and contain the Limited Exclusion Provision set out above;
provided this paragraph (3) shall not be applicable to Family Automobile Policies, Special Automobile Policies, or policies or combination policies of a similar nature, issued by the Group on New York risks, until 90 days following approval of the Limited Exclusion Provision by the Governmental Authority having jurisdiction thereof.

(3) Except for those classes of policies specified in clause II of paragraph (2) and without in any way restricting the operation of paragraph (1) of this Clause, it is understood and agreed that for all purposes of this Contract the original liability policies of the Reassured (new, renewal and replacement) affording the following coverages:

Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability (including Massachusetts Motor Vehicle or Garage Liability)

shall be deemed to include, with respect to such coverages, from the time specified in Clause V of this paragraph (3), the following provision (specified as the Broad Exclusion Provision).

**Broad Exclusion Provision.**

It is agreed that the policy does not apply:

I.  Under any Liability Coverage, to injury, sickness, disease, death or destruction
  (a) with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or
  (b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II.  Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III.  Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if
  (a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;
  (b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or
  (c) the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

*continued overleaf.*

NUCLEAR INCIDENT EXCLUSION CLAUSE—LIABILITY—REINSURANCE—U.S.A.—(continued).

IV.  As used in this endorsement:

"hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means source material, special nuclear material or byproduct material; "source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof; "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; "waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof; "nuclear facility" means

(a)  any nuclear reactor,

(b)  any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c)  any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d)  any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste, and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

With respect to injury to or destruction of property, the word "injury" or "destruction" includes  all forms of radioactive contamination of property.

V.  The inception dates and thereafter of all original policies affording coverages specified in this paragraph (3), whether new, renewal or replacement, being policies which either

(a)  become effective on or after 1st May, 1960, or

(b)  become effective before that date and contain the Broad Exclusion Provision set out above;

provided this paragraph (3) shall not be applicable to

(i)  Garage and Automobile Policies issued by the Reassured on New York risks, or

(ii)  statutory liability insurance required under Chapter 90, General Laws of Massachusetts,

until 90 days following approval of the Broad Exclusion Provision by the Governmental Authority having jurisdiction thereof.

It is further provided that original liability policies affording coverages described in this paragraph (3), (other than those policies and coverages described in (i) and (ii) above), which become effective before 1st May, 1960, and do not contain the Broad Exclusion Provision set out above, but which contain the Broad Exclusion Provision set out in N.M.A. 1118, shall be construed as if incorporating such portions of the Broad Exclusion Provision set out above as are more liberal to the holders of such policies.

(4)  Without in any way restricting the operation of paragraph (1) of this clause it is understood and agreed that original liability policies of the Reassured for those classes of policies

(a)  described in Clause II of paragraph (2) effective before 1st June, 1958, or

(b)  described in paragraph (3) effective before 1st March, 1958,

shall be free until their natural expiry dates or 1st June, 1958, whichever first occurs, from the application of the other provisions of this Clause.

(5)  Without in any way restricting the operation of paragraph (1) of this Clause, it is understood and agreed that paragraphs (2) and (3) above are not applicable to original liability policies of the Reassured in Canada and that with respect to such policies this Clause shall be deemed to include the Nuclear Energy Liability Exclusion Provisions actually used on such policies by the Reassured; provided that if the Reassured shall fail to include such Exclusion Provisions in any such policy where it is legally permitted to do so, such policy shall be deemed to include such Exclusion Provisions.

N.M.A. 1256
9/2/60

 

**NUCLEAR INCIDENT EXCLUSION CLAUSE—PHYSICAL DAMAGE AND LIABILITY (BOILER AND MACHINERY POLICIES) REINSURANCE—U.S.A.**

(1)   This Contract does not cover any loss or liability accruing to the Reassured as a member of, or subscriber to, any association of insurers or reinsurers formed for the purpose of covering nuclear energy risks or as a direct or indirect reinsurer of any such member, subscriber or association.

(2)   Without in any way restricting the operation of paragraph (1) of this Clause it is understood and agreed that for all purposes of this Contract all original Boiler and Machinery Insurance or Reinsurance contracts of the Reassured shall be deemed to include the following provisions of this paragraph;

This Policy does not apply to " loss ", whether it be direct or indirect, proximate or remote

(a)  from an Accident caused directly or indirectly by nuclear reaction, nuclear radiation or radioactive contamination, all whether controlled or uncontrolled; or

(b)  from nuclear reaction, nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, caused directly or indirectly by, contributed to or aggravated by an Accident.

(3)   However, it is agreed that loss arising out of the use of Radioactive Isotopes in any form is not hereby excluded from reinsurance protection.

(4)   Without in any way restricting the operation of paragraph (1) hereof, it is understood and agreed that

(a)  all policies issued by the Reassured effective on or before 30th April, 1958, shall be free from the application of the other provisions of this Clause until expiry date or 30th April, 1961, whichever first occurs, whereupon all the provisions of this Clause shall apply.

(b)  with respect to any risk located in Canada policies issued by the Reassured effective on or before 30th June, 1958, shall be free from the application of the other provisions of this Clause until expiry date or 30th June, 1961, whichever first occurs, whereupon all the provisions of this Clause shall apply.

N.M.A. 1168.
28/8/58

COPY

C. N. 12935

ADDENDUM NO. 1

to

CONTRACT OF REINSURANCE

issued to

ROYAL INSURANCE COMPANY, LIMITED ( U.S. BRANCH)

AMERICAN AND FOREIGN INSURANCE COMPANY

THE BRITISH AND FOREIGN MARINE INSURANCE COMPANY LIMITED
( U.S. BRANCH)

GLOBE INDEMNITY COMPANY

THE LIVERPOOL & LONDON & GLOBE INSURANCE COMPANY
LIMITED ( U.S. BRANCH)

THE LONDON AND LANCASHIRE INSURANCE COMPANY, LIMITED
( U.S. BRANCH)

THE MARINE INSURANCE COMPANY, LIMITED (U.S. BRANCH)

NEWARK INSURANCE COMPANY

QUEEN INSURANCE COMPANY OF AMERICA

ROYAL INDEMNITY COMPANY

SAFEGUARD INSURANCE COMPANY

STANDARD MARINE INSURANCE COMPANY, LIMITED ( U.S. BRANCH)

THAMES AND MERSEY MARINE INSURANCE COMPANY, LIMITED
(U.S. BRANCH)

(hereinafter either individually or collectively called the 'Group')

by

CERTAIN INSURANCE COMPANIES
each for its own part and not one for the other

(hereinafter called the 'Reinsurers')

-1-

## CONTINGENCY FIRST EXCESS OF LOSS COVER

It is agreed that effective midnight December 31st, 1967 this Contract is amended as follows:-

1.  Exclusion 4 of Article 2 is amended to read:-

    4.  Liability in respect of excess of loss reinsurance.  This exclusion does not apply to any such reinsurance effected between any of the Companies reinsured hereunder. Moreover, liability accepted by way of pro rata reinsurance in respect of excess of loss insurance shall not be excluded herefrom and with respect to Casualty business reinsurances written on an excess of loss basis on specific risks shall not be considered excess of loss reinsurance for the purposes of this Contract.

2.  With respect to Exclusion 5 of Article 2, the "Nuclear Incident Exclusion Clause - Liability - Reinsurance", which attaches to and forms part of this Contract, is hereby deleted and replaced by the revised "Nuclear Incident Exclusion Clause - Liability - Reinsurance", attached to this Addendum.

3.  Reinsurers and their participations are as signed hereon and not as previously signed.

-2-

C. N. 12935
JAL/AR

SIGNED, in London, this            day of                1968.

For and on behalf of Reinsurers:

In witness wherefo I being a representative of the Leading Office which is duly
authorised by the Reinsurers have hereunto subscribed my name on their behalf.



25.116%

C. N. 12935
JAL/AR

## NUCLEAR INCIDENT EXCLUSION CLAUSE—LIABILITY—REINSURANCE—U.S.A.

(1)  This Contract does not cover any loss or liability accruing to the Reassured as a member of, or subscriber to, any association of insurers or reinsurers formed for the purpose of covering nuclear energy risks or as a direct or indirect reinsurer of any such member, subscriber or association.

(2)  Without in any way restricting the operation of paragraph (1) of this Clause it is understood and agreed that for all purposes of this Contract all the original policies of the Reassured (new, renewal and replacement) of the classes specified in Clause II of this paragraph (2) from the time specified in Clause III in this paragraph (2) shall be deemed to include the following provision (specified as the Limited Exclusion Provision):

Limited Exclusion Provision.*

I.   It is agreed that the policy does not apply under any Liability coverage,
to { injury, sickness, disease, death or destruction
{ bodily injury or property damage   with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability.

II.  Family Automobile Policies (liability only), Special Automobile Policies (private passenger automobiles, liability only), Farmers Comprehensive Personal Liability Policies (liability only), Comprehensive Personal Liability Policies (liability only) or policies of a similar nature; and the liability portion of combination forms related to the four classes of policies stated above, such as the Comprehensive Dwelling Policy and the applicable types of Homeowners Policies.

III. The inception dates and thereafter of all original policies as described in II above, whether new, renewal or replacement, being policies which either
(a) become effective on or after 1st May, 1960, or
(b) become effective before that date and contain the Limited Exclusion Provision set out above;
provided this paragraph (2) shall not be applicable to Family Automobile Policies, Special Automobile Policies, or policies or combination policies of a similar nature, issued by the Reassured on New York risks, until 90 days following approval of the Limited Exclusion Provision by the Governmental Authority having jurisdiction thereof.

(3)  Except for those classes of policies specified in Clause II of paragraph (2) and without in any way restricting the operation of paragraph (1) of this Clause, it is understood and agreed that for all purposes of this Contract the original liability policies of the Reassured (new, renewal and replacement) affording the following coverages:

Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability (including Massachusetts Motor Vehicle or Garage Liability)

shall be deemed to include, with respect to such coverages, from the time specified in Clause V of this paragraph (3), the following provision (specified as the Broad Exclusion Provision):

Broad Exclusion Provision.*

It is agreed that the policy does not apply:

I.   Under any Liability Coverage, to { injury, sickness, disease, death or destruction
{ bodily injury or property damage

(a) with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II.  Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating
to { immediate medical or surgical relief,
{ first aid,   to expenses incurred with respect
to { bodily injury, sickness, disease or death
{ bodily injury   resulting from the hazardous properties of nuclear material
and arising out of the operation of a nuclear facility by any person or organization.

III. Under any Liability Coverage,
to { injury, sickness, disease, death or destruction   resulting from the hazardous properties of nuclear material, if
{ bodily injury or property damage

(a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;

(b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

(c) the { injury, sickness, disease, death or destruction   arises out of the furnishing by an insured of
{ bodily injury or property damage   services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories, or possessions or Canada, this exclusion (c) applies only
to { injury to or destruction of property at such nuclear facility.
{ property damage to such nuclear facility and any property thereat.

*continued overleaf.*



NUCLEAR INCIDENT EXCLUSION CLAUSE—LIABILITY—REINSURANCE—U.S.A.—*(continued)*.

IV.   As used in this endorsement:
"hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means source material, special nuclear material or byproduct material; "source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof; "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; "waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof; "nuclear facility" means

(a) any nuclear reactor,

(b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;
*With respect to injury to or destruction of property, the word "injury" or "destruction"*
*"property damage" includes all forms of radioactive contamination of property.*
*includes all forms of radioactive contamination of property.*

V.   The inception dates and thereafter of all original policies affording coverages specified in this paragraph (3), whether new, renewal or replacement, being policies which become effective on or after 1st May, 1960, provided this paragraph (3) shall not be applicable to

(i) Garage and Automobile Policies issued by the Reassured on New York risks, or

(ii) statutory liability insurance required under Chapter 90, General Laws of Massachusetts,
until 90 days following approval of the Broad Exclusion Provision by the Governmental Authority having jurisdiction thereof.

(4)   Without in any way restricting the operation of paragraph (1) of this Clause, it is understood and agreed that paragraphs (2) and (3) above are not applicable to original liability policies of the Reassured in Canada and that with respect to such policies this Clause shall be deemed to include the Nuclear Energy Liability Exclusion Provisions adopted by the Canadian Underwriters' Association or the Independent Insurers Conference of Canada.

---

*NOTE.   The words printed in italics in the Limited Exclusion Provision and in the Broad Exclusion Provision shall apply only in relation to original liability policies which include a Limited Exclusion Provision or a Broad Exclusion Provision containing those words.

NMA 1590
21/9/67



ADDENDUM NO. 2

to

CONTRACT OF REINSURANCE

issued to

ROYAL INSURANCE COMPANY, LIMITED (U.S. BRANCH)
AMERICAN AND FOREIGN INSURANCE COMPANY
THE BRITISH AND FOREIGN MARINE INSURANCE COMPANY LIMITED (U.S. BRANCH)
GLOBE INDEMNITY COMPANY
THE LIVERPOOL & LONDON & GLOBE INSURANCE COMPANY LIMITED (U.S. BRANCH)
THE LONDON AND LANCASHIRE INSURANCE COMPANY, LIMITED (U.S. BRANCH)
THE MARINE INSURANCE COMPANY, LIMITED (U.S. BRANCH)
NEWARK INSURANCE COMPANY
QUEEN INSURANCE COMPANY OF AMERICA
ROYAL INDEMNITY COMPANY
SAFEGUARD INSURANCE COMPANY
STANDARD MARINE INSURANCE COMPANY, LIMITED (U.S. BRANCH)
THAMES AND MERSEY MARINE INSURANCE COMPANY, LIMITED (U.S. BRANCH)

(hereinafter either individually or collectively called the "Group")

By

CERTAIN INSURANCE COMPANIES
each for its own part and not one for the other
(hereinafter called the "Reinsurers")

CONTINGENCY FIRST EXCESS OF LOSS COVER

It is hereby understood and agreed that effective 12:01 a.m., January 1, 1969 this Contract is terminated in accordance with the provisions of Article 4 (Term and Cancellation).

All other terms and conditions of this Contract remain unchanged.

SIGNED, in New York, New York, this 15th day of April 1969.

ROYAL INSURANCE GROUP

_____
VICE PRESIDENT

and in          Zurich          , this 11th day of March 1969.

CERTAIN INSURANCE COMPANIES
AS SET OUT IN THE SCHEDULE ATTACHED

In witness whereof I being a representative of the Leading Office which is duly authorised by the Reinsurers have hereunto subscribed my name on their behalf.

REDACTED

Exhibit

3

COPY

C.N.13139

CONTRACT OF REINSURANCE

issued to

ROYAL INSURANCE COMPANY, LIMITED (U.S.BRANCH)

AMERICAN AND FOREIGN INSURANCE COMPANY

THE BRITISH AND FOREIGN MARINE INSURANCE COMPANY LIMITED
(U.S.BRANCH)

GLOBE INDEMNITY COMPANY

THE LIVERPOOL & LONDON & GLOBE INSURANCE COMPANY
LIMITED (U.S.BRANCH)

THE LONDON AND LANCASHIRE INSURANCE COMPANY, LIMITED
(U.S.BRANCH)

THE MARINE INSURANCE COMPANY, LIMITED (U.S. BRANCH)

NEWARK INSURANCE COMPANY

QUEEN INSURANCE COMPANY OF AMERICA

ROYAL INDEMNITY COMPANY

SAFEGUARD INSURANCE COMPANY

STANDARD MARINE INSURANCE COMPANY, LIMITED (U.S.BRANCH)

THAMES AND MERSEY MARINE INSURANCE COMPANY, LIMITED
(U.S.BRANCH)

(hereinafter either individually or collectively called the 'Group')

by

CERTAIN INSURANCE COMPANIES
each for its own part and not one for the other

(hereinafter called the 'Reinsurers')

- 1 -

## CONTINGENCY SECOND EXCESS OF LOSS COVER

Whenever the term 'Group' is used in this Contract, same shall be held to include any and/or all subsidiary Companies, which are or may hereafter be under the management of the Group provided, however, that immediate notice be given to the Reinsurers of any such subsidiary Companies which may hereafter come under the management of the Group prior to any risk attaching hereunder, with full particulars as to how such acquisition is likely to affect this Contract. In the event of either party maintaining that such acquisition calls for alterations in existing terms and an agreement not being arrived at, then the business of such acquired Company is covered only for a period of forty-five days after notice to the Group that the Reinsurers do not wish to cover the business so acquired.

## ARTICLE 1

### BUSINESS COVERED

For and in consideration of the premiums to be paid by the Group to the Reinsurers as herein provided the Reinsurers agree to fully indemnify the Group as set forth in Article 5 herein in respect of the excess liability which may accrue to the Group under all policies, bonds, binders, contracts of Insurance or Reinsurance, Co-Insurance or Co-Indemnity, oral or written, or other evidences of liability (hereinafter referred to as 'policy' or 'policies' and/or 'bond' or bonds') classified by the Group as (including such business under Multi-Peril Package Policies):

    (a) Workmen's Compensation, Employers' Liability and Voluntary Compensation, all including Occupational Disease.

    (b) All Bodily and Personal Injury Liability.

    (c) All Property Damage Liability classified as Casualty.

    (d) Fidelity and Forgery.

    (e) Burglary and Theft.

    (f) Boiler and Machinery.

C.N. 13139

issued or contracted for by the Group covering anywhere in the World subject to the exclusions set forth in Article 2 and the other terms and conditions of this Contract as set forth herein.

## ARTICLE 2

### EXCLUSIONS

Notwithstanding anything to the contrary contained herein, it is specially agreed that this Contract does not apply to but specifically excludes:-

1. Policies covering Workmen's Compensation, General Liability and Automobile Liability business under which the Group receives complete reimbursement for losses and expenses thereunder.

2. Liability assumed by the Group as a member of any Pool, Association, Exchange or similar body.

3. Financial Guarantee and Insolvency. However, the liability of the Group under any bond covering losses due to negligence of any person or failure of any person to faithfully perform his duty or failure to account for and pay over money or other property in his custody, shall not be considered Financial Guarantee or Insolvency even though the Group is required to pay such loss because of the insolvency of such person or because of the insolvency of a financial institution in which he has deposited money.

4. Liability in respect of excess of loss reinsurance. This exclusion does not apply to any such reinsurance effected between any of the Companies reinsured hereunder or assumed from the Hawaiian Insurance and Guaranty Company, Ltd. Moreover, liability accepted by way of pro rata reinsurance in respect of excess of loss insurance shall not be excluded herefrom and with respect to Casualty business reinsurances written on an excess of loss basis on specific risks shall not be considered excess of loss reinsurance for the purposes of this Contract.

5. Nuclear Incident -

   (a) Liability - Reinsurance
   (b) Boiler and Machinery - Reinsurance

   as per riders attached.

C.N. 13139                                    - 3 -

6. Loss or damage accruing to the Group, directly or indirectly, whether as an insurer or reinsurer, from any pool of insurers or reinsurers formed for the purpose of covering Atomic or Nuclear Energy risks.

7. All business of the Excess and Casualty Reinsurance Association, whether assumed directly or indirectly by the Group.

<u>ARTICLE 3</u>

<u>SELF-INSURED OBLIGATIONS</u>

1.    As respects all business the subject matter hereof, this Contract shall cover all obligations of the Group assumed by it as a self-insurer (or self-insured obligations in excess of any valid and collectible insurance available to the Group) to the same extent as if all types of insurance covered by this Contract were afforded under the broadest form of agreements issued by the Group.

2.    An insurance or reinsurance wherein the Group hereby reinsured and/or its affiliated and/or subsidiary companies are named as the Insured or Reinsured party, either alone or jointly with some other party, shall be deemed to be an insurance or reinsurance coming within the scope of this Contract, notwithstanding that no legal liability may arise in respect thereof by reason of the fact that the Group hereby reinsured and/or its affiliated and/or subsidiary companies are named as the Insured or Reinsured party or one of the Insured or Reinsured parties.

<u>ARTICLE 4</u>

<u>TERM AND CANCELLATION</u>

1.    This Contract shall take effect at March 17th 1967 and shall remain in force for an indefinite period but may be terminated at any Midnight, December 31st by either party giving to the other six months' prior notice.

2.    If any law or regulation of the Federal or State or Local Government of any jurisdiction in which the Group is doing business shall render illegal the arrangements made in this Contract, the Contract can be terminated immediately, insofar as it applies to such jurisdiction, by the Group giving notice to the Reinsurers to such effect.

C.N. 13139                                     - 4 -

3.    With respect to all business covered hereunder except Fidelity and Burglary this Contract shall apply to accidents, casualties, disasters and occurrences taking place during the term this Contract is in force.

4.    With respect to Fidelity and Burglary business, this Contract shall apply to occurrences discovered during the time this Contract is in force (irrespective of when such occurrences are sustained under the original policies or bonds).

5.    If this Contract shall terminate while a loss covered hereunder is in progress, it is agreed that, subject to the other conditions of this Contract, the Reinsurers shall indemnify the Group as if the entire loss had occurred during the term of this Contract, provided the loss covered hereunder started before the time of termination.

## ARTICLE 5

INSURING CLAUSE

Subject to the general conditions set forth in this Contract no claim to be paid for any loss under this Contract unless the Group has paid or advanced or agreed to pay or advance or becomes liable to pay to or on behalf of its Insured or Reinsured on account of loss by any one accident, disaster, casualty or occurrence an amount exceeding $45,000,000, and the sum recoverable under this Contract shall be 100% of the amount the excess of $45,000,000 ultimate net loss in respect of each and every loss sustained by the Group, but such sum recoverable shall not exceed a further $5,000,000 in respect of any one such accident, disaster, casualty or occurrence.

With the exception of Boiler and Machinery business it is agreed that no liability shall attach under this Contract unless two or more policies or classes are involved in a loss resulting from any one accident, disaster, casualty or occurrence.

It is agreed that in the event of a loss resulting from an accident, disaster, casualty or occurrence involving business covered hereunder and other business covered under the Group's underlying blanket First, Second and Third Excess of Loss Covers that portion of the loss attributable to such other business may be included up to a maximum of $30,000,000 in determining the ultimate net loss under this Contract.

- 5 -

C.N. 13139

## ARTICLE 6

GENERAL CONDITIONS

A.   It is agreed that recoveries under the Blanket First, Second and Third Excess of Loss Covers and under the Contingency First Excess of Loss Covers shall be disregarded for the purpose of calculating the ultimate net loss under this Contract and such recoveries shall inure to the sole benefit of the Group.

B.   With respect to Third Party Liability insurance of any kind this Contract shall protect the Group, within the limits hereof, in connection with any loss for which the Group may be legally liable to pay in excess of the limit of its original policy, such loss in excess of the limit having been incurred because of failure by it to settle within the policy limit or by reason of alleged or actual negligence, fraud or bad faith in rejecting an offer of settlement or in the preparation of the defence or in the trial of any action against its Insured or Reinsured or in the preparation or pro-secution of an appeal consequent upon such action.

## ARTICLE 7

DEFINITIONS

A.   Subject to the exception listed below in paragraph B the terms 'accident', disaster', 'casualty', or 'occurrence' as used in this Contract shall be deemed and construed to mean any one, or more than one, accident, disaster or occurrence arising or resulting from one event upon which liability is predicated under any one, or more than one, of the policies covered by this Contract, and, as respects liability arising out of products manufactured, made, handled, distributed or sold by an assured, liability arising out of property damage or out of malpractice, said term shall also be deemed and construed to mean any one, or more than one, accident, happening or occurrence which the available evidence shows to be the probable common cause or causes of more than one claim under a policy, or policies, or renewals thereof, irrespective of the time of the presentation of such claims to the assured or the Group, but this Contract does not cover any claim or claims arising from a common cause, which are not first advised during the period of this Contract.

B.   In respect of business classified by the Group as Fidelity the terms 'accident', 'disaster', 'casualty' or 'occurrence' shall mean

- 6 -

(a) any loss or series of losses whether covered under one or more bonds resulting from acts or omissions of any one person or in which such person is concerned or implicated, or

(b) any loss or losses, other than as specified in (a), and whether covered under one or more bonds, resulting from any one casualty or event.

It is further agreed that any definition of a single loss occurrence or contingency under any bond covered by this Contract which is in conflict with (a) or (b) above shall not apply.

<u>ARTICLE 8</u>

<u>ULTIMATE NET LOSS</u>

1.    The term 'Ultimate Net Loss' shall be understood to mean the actual loss or losses sustained by the Group under its policies, such loss or losses to include expenses of litigation, if any, and all other loss expenses of the Group (excluding general office overhead and salaries of its officials and regular employees but including the pro rata share of salaries and expenses of the Group's outside employees according to the time occupied in adjusting such loss and also including expenses of the Group's officials incurred in connection with the loss but such inclusion shall not apply to salaries of the Group's officials or any normal overhead charges) but salvages and any other recoveries, including recoveries under all reinsurances (except as provided in Article 6) are first to be deducted from such loss to arrive at the amount of liability, if any, attaching hereunder. Nothing in this clause, however, shall be construed as meaning that losses are not recoverable hereunder until the ultimate net loss to the Group has been ascertained.

2.    All salvages, recoveries and payments recovered or received subsequent to a loss settlement under this Contract shall be applied as if recovered or received prior to the said settlement and all necessary adjustments shall be made by the parties hereto.

3.    Whenever the Group issues a lost instrument bond or a lost instrument letter of indemnity, for salvage purposes or in lieu of loss payment under its bond or policy, Reinsurers agree to accept liability under such bond or letter of indemnity in accordance with the terms of this Contract.

- 7 -

C.N. 13139

ARTICLE 9

NET RETAINED LINES

1.   Except as otherwise provided in Article 8 this Contract applies only to that portion of any Insurance or Reinsurance which the Group retains net for its own account, and in calculating the amount of any loss hereunder and also in computing the amount or amounts in excess of which this Contract attaches, only loss or losses in respect of that portion of any Insurance or Reinsurance which the Group retains net for its own account shall be included.

2.   The amount of Reinsurers' liability hereunder in respect of any loss or losses shall not be increased by reason of the inability of the Group to collect from any other Reinsurers whether specific or general, any amounts which may have become due from them whether such inability arises from the insolvency of such other Reinsurers or otherwise.

ARTICLE 10

REINSTATEMENT

In the event of the whole or any portion of the indemnity under this Contract being exhausted by loss, the amount so exhausted shall be automatically reinstated from the time of the occurrence of the loss (or from the time of discovery of the loss in respect of Fidelity and Burglary business) without payment of additional premium. Nevertheless the Reinsurers' liability in any one accident, disaster, casualty or occurrence shall never exceed $5,000,000.

ARTICLE 11

PREMIUM

The Group shall pay to the Reinsurers at inception a premium of $5,958.89 which shall cover the period 17th March 1967 to 31st December 1967.

Thereafter the premium to be paid to the Reinsurers shall be $7,500 annually payable each January 1st during the term of this Contract.

ARTICLE 12

NOTICE OF LOSS AND LOSS SETTLEMENTS

1.   In the event of an accident, disaster, casualty or occurrence

C.N. 13139                                    - 8 -

occurring which either results in or appears to be of serious enough nature as probably to result in a loss involving this Contract the Group shall give notice as soon as reasonably practicable to Reinsurers through Guy Carpenter & Company, Inc., 110 William Street, New York, New York 10038.

2.     The Reinsurers agree to abide by the loss settlements of the Group, such settlements to be considered as satisfactory proofs of loss, and amounts falling to the share of the Reinsurers shall be immediately payable to the Group by them upon reasonable evidence of the amount paid by the Group being presented to Reinsurers through Guy Carpenter & Company, Inc. by the Group. All papers in the possession of the Group in connection with the adjustment of said loss shall at all times within a reasonable period be open to the inspection of a properly authorised representative of the Reinsurers.

### ARTICLE 13

LOSS RESERVES (Applies only to Reinsurers domiciled outside of the United States)

1.     As regards policies issued by the Group coming within the scope of this Contract, the Group agrees that when it shall file with the Insurance Department or set up on its books reserves for losses which it shall be required to set up by law it will forward to the Reinsurers a statement showing the proportion of such loss reserves which is applicable to them. The Reinsurers hereby agree that they will apply for and secure delivery to the Group a clean irrevocable Letter of Credit issued by First National City Bank of New York in an amount equal to Reinsurers' proportion of said loss reserves.

2.     The Group undertakes to use and apply any amounts which it may draw upon such Credit for the following purposes only:-

(a) To pay the Reinsurers' share or to reimburse the Group for the Reinsurers' share of any liability for loss reinsured by this reinsurance Contract, each withdrawal to be debited on the Group's records to the Loss Reserve Account Fund established for such liability, as hereinbefore provided.

(b) To make refund of any sum which is in excess of the actual amount required to pay Reinsurers' share of any liability reinsured by this reinsurance Contract.

C.N. 13139

- 9 -

3.     First National City Bank of New York shall have no responsibility whatsoever in connection with the propriety of withdrawals made by the Group or the disposition of funds withdrawn, except to see that withdrawals are made only upon the order of properly authorized representatives of the Group.

## ARTICLE 14

### REINSURANCE TAX

In consideration of the terms under which this Contract is issued, the Group undertakes not to claim any deduction of the premium hereon when making Canadian tax returns or when making tax returns, other than Income or Profits Tax returns, to any State or Territory of the United States of America or to the District of Columbia.

### FEDERAL EXCISE TAX (Applies only to those Reinsurers unlicenced in the U.S.A.)

1.     The Reinsurers have agreed to allow for the purpose of paying the Federal Excise Tax, one per cent of the premium payable hereon to the extent such premium is subject to Federal Excise Tax.

2.     It is understood and agreed that in the event of any return of premium becoming due hereunder, the Reinsurers will deduct one per cent from the amount of the return and the Group or its agent should take steps to recover the tax from the U.S. Government.

## ARTICLE 15

### CURRENCY

1.     Wherever the word 'Dollars' and the sign '$' appear in this Contract they shall be construed to mean United States Dollars, excepting in those cases where the policies are issued by the Group in Canadian Dollars in which case they shall mean Canadian Dollars.

2.     In the event of the Group being involved in a loss requiring payment in United States and Canadian Currency, the Group's retention and the amount recoverable hereunder shall be apportioned to the two currencies in the same proportion as the amount of ultimate net loss in each currency bears to the total amount of ultimate net loss paid by the Group.

- 10 -

C.N. 13139

3.   For the purposes of this Contract, where the Group receives premiums or pays losses in currencies other than United States or Canadian Currency, such premiums and losses shall be converted into United States Dollars at the actual rates of exchange at which these premiums and losses are entered in the Group's books.

### ARTICLE 16

#### ACCESS TO RECORDS

The Reinsurers or their duly accredited representatives shall have free access to the books and records of the Group at all reasonable times for the purpose of obtaining information concerning this Contract or the subject matter thereof.

### ARTICLE 17

#### SERVICE OF SUIT CLAUSE (U.S.A.) (Applies only to those Reinsurers unlicenced in the U.S.A.)

1.   It is agreed that in the event of the failure of Reinsurers hereon to pay any amount claimed to be due hereunder, Reinsurers hereon, at the request of the Group, will submit to the jurisdiction of any Court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court. It is further agreed that service of process in such suit may be made upon Messrs. Mendes and Mount, 27 William Street, New York, N.Y. 10005 and/or their Nominees, and that in any suit instituted against any one of them upon this Contract Reinsurers will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

2.   The above-named are authorised and directed to accept service of process on behalf of Reinsurers in any such suit and/or upon the request of the Group to give a written undertaking to the Group that they will enter a general appearance upon Reinsurers' behalf in the event such a suit shall be instituted. Further pursuant to any statute of any state, territory or district of the United States of America which makes provision therefor, Reinsurers hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on

C.N. 13139

- 11 -

behalf of the Group or any beneficiary hereunder arising out of this Contract, and hereby designate the above-named as the person to whom the said officer is authorised to mail such process or a true copy thereof.

ARTICLE 18

INSOLVENCY

1.   In the event of the insolvency of the Group, this reinsurance shall be payable directly to the Group, or to its liquidator, receiver, conservator or statutory successor on the basis of the liability of the Group without diminution because of the insolvency of the Group or because the liquidator, receiver, conservator or statutory successor of the Group has failed to pay all or a portion of any claim. It is agreed, however, that the liquidator, receiver, conservator or statutory successor of the Group shall give written notice to the Reinsurers of the pendency of a claim against the Group indicating the policy or bond reinsured which claim would involve a possible liability on the part of the Reinsurers within a reasonable time after such claim is filed in the conservation or liquidation proceeding or in the receivership, and that during the pendency of such claim the Reinsurers may investigate such claim and interpose, at their own expense, in the proceeding where such claim is to be adjudicated any defence or defences that they may deem available to the Group or its liquidator, receiver, conservator or statutory successor. The expense thus incurred by the Reinsurers shall be chargeable, subject to the approval of the court, against the Group as part of the expense of conservation or liquidation to the extent of a pro rata share of the benefit which may accrue to the Group solely as a result of the defence undertaken by the Reinsurers.

2.   Where two or more Reinsurers are involved in the same claim and a majority in interest elect to interpose defence to such claim, the expense shall be apportioned in accordance with the terms of the reinsurance agreement as though such expense had been incurred by the Group.

3.   The reinsurance shall be payable by the Reinsurers to the Group or to its liquidator, receiver, conservator or statutory successor, except as provided by Section 315 of the New York Insurance Law or except (a) where the contract specifically provides another payee of such reinsurance in the event of the insolvency of the Group, and (b) where the Reinsurers with the consent of the direct insured or insureds have assumed such policy obligations of the Group as direct obligations of the Reinsurers to the payees under such policies and in substitution for the obligations of the Group to such payees.

- 12 -

C.N. 13139

ARTICLE 19

## ARBITRATION

If any dispute shall arise between the Group and the Reinsurers with reference to the interpretation of this Contract or their rights with respect to any transaction involved, the dispute shall be referred to three arbitrators, one to be chosen by each party and the third by the two so chosen. If either party refuses or neglects to appoint an arbitrator within thirty (30) days after the receipt of written notice from the other party requesting it to do so, the requesting party may nominate two arbitrators, who shall choose the third. Each party shall submit its case to the arbitrators within thirty (30) days of the appointment of the arbitrators. The arbitrators shall consider this Contract an honorable engagement rather than merely a legal obligation; they are relieved of all judicial formalities and may abstain from following the strict rules of law. The decision of a majority of the arbitrators shall be final and binding on both the Group and the Reinsurers. The expense of the arbitrators and of the arbitration shall be equally divided between the Group and the Reinsurers. Any such arbitration shall take place in New York, New York, unless some other location is mutually agreed upon by the Group and the Reinsurers.

ARTICLE 20

## INTERMEDIARY

Guy Carpenter & Company, Inc. are hereby recognised as the Intermediary negotiating this Contract for all business hereunder except Canadian business, on which Guy Carpenter & Company (Canada) Limited are hereby recognised as the Intermediary. All communications relating thereto shall be transmitted to the Reassured and the Reinsurers through Guy Carpenter & Company, Inc., 110 William Street, New York, N.Y. 10038, (acting in behalf of themselves and Guy Carpenter & Company (Canada) Limited).

C.N. 13139

SIGNED, in   LONDON, this                    day of.                  1968.

In  witness  whereof I being a  representative  of  the Leading Office
which  is  duly  authorised  by  the  Reinsurers  have  hereunto  subscribed
my  name  on  their  behalf.

REDACTED

EAGLE STAR INSURANCE COMPANY                          4.00%

REDACTED

26.20%

C.N. 13139                        - 14 -
J AL/db

## NUCLEAR INCIDENT EXCLUSION CLAUSE—LIABILITY—REINSURANCE—U.S.A.

(1)  This Contract does not cover any loss or liability accruing to the Reassured as a member of, or subscriber to, any association of insurers or reinsurers formed for the purpose of covering nuclear energy risks or as a direct or indirect reinsurer of any such member, subscriber or association.

(2)  Without in any way restricting the operation of paragraph (1) of this Clause it is understood and agreed that for all purposes of this Contract all the original policies of the Reassured (new, renewal and replacement) of the classes specified in clause II of this paragraph (2) from the time specified in clause III in this paragraph (2) shall be deemed to include the following provision (specified as the Limited Exclusion Provision):

**Limited Exclusion Provision.**

I.  It is agreed that the policy does not apply under any liability coverage, to injury, sickness, disease, death or destruction with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability.

II.  Family Automobile Policies (liability only), Special Automobile Policies (private passenger automobiles, liability only), Farmers Comprehensive Personal Liability Policies (liability only), Comprehensive Personal Liability Policies (liability only) or policies of a similar nature; and the liability portion of combination forms related to the four classes of policies stated above, such as the Comprehensive Dwelling Policy and the applicable types of Homeowners Policies.

III.  The inception dates and thereafter of all original policies as described in II above, whether new, renewal or replacement, being policies which either
    (a)  become effective on or after 1st May, 1960, or
    (b)  become effective before that date and contain the Limited Exclusion Provision set out above:
provided this paragraph (2) shall not be applicable to Family Automobile Policies, Special Automobile Policies, or policies or combination policies of a similar nature, issued by the Group on New York risks, until 90 days following approval of the Limited Exclusion Provision by the Governmental Authority having jurisdiction thereof.

(3)  Except for those classes of policies specified in clause II of paragraph (2) and without in any way restricting the operation of paragraph (1) of this Clause, it is understood and agreed that for all purposes of this Contract the original liability policies of the Reassured (new, renewal and replacement) affording the following coverages:

Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability (including Massachusetts Motor Vehicle or Garage Liability)

shall be deemed to include, with respect to such coverages, from the time specified in Clause V of this paragraph (3), the following provision (specified as the Broad Exclusion Provision):

**Broad Exclusion Provision.**

It is agreed that the policy does not apply:

I.  Under any Liability Coverage, to injury, sickness, disease, death or destruction
    (a)  with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or
    (b)  resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II.  Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III.  Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if
    (a)  the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;
    (b)  the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or
    (c)  the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

*continued overleaf.*

 

**NUCLEAR INCIDENT EXCLUSION CLAUSE—LIABILITY—REINSURANCE—U.S.A.—(continued).**

IV.   As used in this endorsement:

"hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means source material, special nuclear material or byproduct material; "source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof; "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; "waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof; "nuclear facility" means

   (a)  any nuclear reactor,

   (b)  any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

   (c)  any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

   (d)  any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste, and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;
With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

V.   The inception dates and thereafter of all original policies affording coverages specified in this paragraph (3), whether new, renewal or replacement, being policies which either

   (a)  become effective on or after 1st May, 1960, or

   (b)  become effective before that date and contain the Broad Exclusion Provision set out above;

provided this paragraph (3) shall not be applicable to

   (i)  Garage and Automobile Policies issued by the Reassured on New York risks, or

   (ii)  statutory liability insurance required under Chapter 90, General Laws of Massachusetts,

until 90 days following approval of the Broad Exclusion Provision by the Governmental Authority having jurisdiction thereof.

It is further provided that original liability policies affording coverages described in this paragraph (3), (other than those policies and coverages described in (i) and (ii) above), which become effective before 1st May, 1960, and do not contain the Broad Exclusion Provision set out above, but which contain the Broad Exclusion Provision set out in N.M.A. 1118, shall be construed as if incorporating such portions of the Broad Exclusion Provision set out above as are more liberal to the holders of such policies.

   (4)  Without in any way restricting the operation of paragraph (1) of this clause it is understood and agreed that original liability policies of the Reassured for those classes of policies

   (a)  described in Clause II of paragraph (2) effective before 1st June, 1958, or

   (b)  described in paragraph (3) effective before 1st March, 1958,

shall be free until their natural expiry dates or 1st June, 1958, whichever first occurs, from the application of the other provisions of this Clause.

   (5)  Without in any way restricting the operation of paragraph (1) of this Clause, it is understood and agreed that paragraphs (2) and (3) above are not applicable to original liability policies of the Reassured in Canada and that with respect to such policies this Clause shall be deemed to include the Nuclear Energy Liability Exclusion Provisions actually used on such policies by the Reassured; provided that if the Reassured shall fail to include such Exclusion Provisions in any such policy where it is legally permitted to do so, such policy shall be deemed to include such Exclusion Provisions.

N.M.A. 1255
4/2/60

**NUCLEAR INCIDENT EXCLUSION CLAUSE—PHYSICAL DAMAGE AND LIABILITY (BOILER AND MACHINERY POLICIES)
REINSURANCE—U.S.A.**

(1)   This Contract does not cover any loss or liability accruing to the Reassured as a member
of, or subscriber to, any association of insurers or reinsurers formed for the purpose of covering nuclear
energy risks or as a direct or indirect reinsurer of any such member, subscriber or association.

(2)   Without in any way restricting the operation of paragraph (1) of this Clause it is understood
and agreed that for all purposes of this Contract all original Boiler and Machinery Insurance or Reinsurance
contracts of the Reassured shall be deemed to include the following provisions of this paragraph;

This Policy does not apply to " loss ", whether it be direct or indirect, proximate or remote

(a)  from an Accident caused directly or indirectly by nuclear reaction, nuclear radiation or
radioactive contamination, all whether controlled or uncontrolled; or

(b)  from nuclear reaction, nuclear radiation or radioactive contamination, all whether con-
trolled or uncontrolled, caused directly or indirectly by, contributed to or aggravated by an
Accident.

(3)   However, it is agreed that loss arising out of the use of Radioactive Isotopes in any form is not
hereby excluded from reinsurance protection.

(4)   Without in any way restricting the operation of paragraph (1) hereof, it is understood and agreed
that

(a)  all policies issued by the Reassured effective on or before 30th April, 1958, shall be free
from the application of the other provisions of this Clause until expiry date or 30th April,
1961, whichever first occurs, whereupon all the provisions of this Clause shall apply;

(b)  with respect to any risk located in Canada policies issued by the Reassured effective on or
before 30th June, 1958, shall be free from the application of the other provisions of this
Clause until expiry date or 30th June, 1961, whichever first occurs, whereupon all the
provisions of this Clause shall apply.

N.M.A. 1166.
23/6/58

COPY

ADDENDUM NO. 1

G.N. 13139

to

CONTRACT OF REINSURANCE

issued to

ROYAL INSURANCE COMPANY, LIMITED (U.S. BRANCH)

AMERICAN AND FOREIGN INSURANCE COMPANY

THE BRITISH AND FOREIGN MARINE INSURANCE COMPANY LIMITED
(U.S. BRANCH)

GLOBE INDEMNITY COMPANY

THE LIVERPOOL & LONDON & GLOBE INSURANCE COMPANY
LIMITED (U.S. BRANCH)

THE LONDON AND LANCASHIRE INSURANCE COMPANY, LIMITED
(U.S. BRANCH)

THE MARINE INSURANCE COMPANY, LIMITED (U.S. BRANCH)

NEWARK INSURANCE COMPANY

QUEEN INSURANCE COMPANY OF AMERICA

ROYAL INDEMNITY COMPANY

SAFEGUARD INSURANCE COMPANY

STANDARD MARINE INSURANCE COMPANY, LIMITED (U.S. BRANCH)

THAMES AND MERSEY MARINE INSURANCE COMPANY, LIMITED
(U.S. BRANCH)

(hereinafter either individually or collectively called the 'Group')

by
CERTAIN INSURANCE COMPANIES
each for its own part and not one for the other

(hereinafter called the 'Reinsurers')

-1-

## CONTINGENCY SECOND EXCESS OF LOSS COVER

It is agreed that effective midnight December 31st, 1967 this Contract is amended as follows:

1. Exclusion 4 of Article 2 is amended to read:-

    4. Liability in respect of excess of loss reinsurance. This exclusion does not apply to any such reinsurance effected between any of the Companies reinsured hereunder. Moreover, liability accepted by way of pro rata reinsurance in respect of excess of loss insurance shall not be excluded herefrom and with respect to Casualty business reinsurances written on an excess of loss basis on specific risks shall not be considered excess of loss reinsurance for the purpose of this Contract.

2. With respect to Exclusion 5 of Article 2, the "Nuclear Incident Exclusion Clause - Liability - Reinsurance", which attaches to and forms part of this Contract, is hereby deleted and replaced by the revised "Nuclear Incident Exclusion Clause - Liability - Reinsurance", attached to this Addendum.

3. Reinsurers and their participations are as signed hereon and not as previously signed.

-2-

C.N. 13139
JAL/AR

SIGNED, in London, this          day of                    1968.

For and on behalf of Reinsurers:

REDACTED

21.50%

C. N. 13139
JAL/AR

## NUCLEAR INCIDENT EXCLUSION CLAUSE—LIABILITY—REINSURANCE—U.S.A.

(1). This Contract does not cover any loss or liability accruing to the Reassured as a member of, or subscriber to, any association of insurers or reinsurers formed for the purpose of covering nuclear energy risks or as a direct or indirect reinsurer of any such member, subscriber or association.

(2) Without in any way restricting the operation of paragraph (1) of this Clause it is understood and agreed that for all purposes of this Contract all the original policies of the Reassured (new, renewal and replacement) of the classes specified in Clause II of this paragraph (2) from the time specified in Clause III in this paragraph (2) shall be deemed to include the following provision (specified as the Limited Exclusion Provision).*

**Limited Exclusion Provision.***

I. It is agreed that the policy does not apply under any liability coverage,
   to { injury, sickness, disease, death or destruction
        bodily injury or property damage } with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability.

II. Family Automobile Policies (liability only), Special Automobile Policies (private passenger automobiles, liability only), Farmers Comprehensive Personal Liability Policies (liability only), Comprehensive Personal Liability Policies (liability only) or policies of a similar nature; the liability portion of combination forms related to the four classes of policies stated above, such as the Comprehensive Dwelling Policy and the applicable types of Homeowners Policies.

III. The inception dates and thereafter of all original policies as described in II above, whether new, renewal or replacement, being policies which either
   (a) become effective on or after 1st May, 1960, or
   (b) become effective before that date and contain the Limited Exclusion Provision set out above;
   provided that this paragraph (2) shall not be applicable to Family Automobile Policies, Special Automobile Policies, or policies or combination policies of a similar nature, issued by the Reassured on New York risks, until 90 days following approval of the Limited Exclusion Provision by the Governmental Authority having jurisdiction thereof.

(3) Except for those classes of policies specified in Clause II of paragraph (2) and without in any way restricting the operation of paragraph (1) of this Clause, it is understood and agreed that for all purposes of this Contract the original liability policies of the Reassured (new, renewal and replacement) affording the following coverages:
   Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability (including Massachusetts Motor Vehicle or Garage Liability)
shall be deemed to include, with respect to such coverages, from the time specified in Clause V of this paragraph (3), the following provision (specified as the Broad Exclusion Provision):

**Broad Exclusion Provision.***

It is agreed that the policy does not apply:

I. Under any Liability Coverage, to { injury, sickness, disease, death or destruction
                                      bodily injury or property damage }
   (a) with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or
   (b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II. Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating
    to { immediate medical or surgical relief,
         first aid, } to expenses incurred with respect
    to { bodily injury, sickness, disease or death
         bodily injury } resulting from the hazardous properties of nuclear material
    and arising out of the operation of a nuclear facility by any person or organization.

III. Under any Liability Coverage,
     to { injury, sickness, disease, death or destruction
          bodily injury or property damage } resulting from the hazardous properties of nuclear material, if
   (a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;
   (b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or
   (c) the { injury, sickness, disease, death or destruction
             bodily injury or property damage } arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only
     to { injury to or destruction of property at such nuclear facility.
          property damage to such nuclear facility and any property thereat.

*continued overleaf.*

NUCLEAR INCIDENT EXCLUSION CLAUSE—LIABILITY—REINSURANCE—U.S.A.—(continued).

IV.  As used in this endorsement:
"hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means source material, special nuclear material or byproduct material; "source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof; "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; "waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof; "nuclear facility" means

(a)  any nuclear reactor,

(b)  any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c)  any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d)  any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,
and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;
{ *With respect to injury to or destruction of property, the word "injury" or "destruction"*
{ *"property damage" includes all forms of radioactive contamination of property.*
{ *includes all forms of radioactive contamination of property.*

V.  The inception dates and thereafter of all original policies affording coverages specified in this paragraph (3), whether new, renewal or replacement, being policies which become effective on or after 1st May, 1960, provided this paragraph (3) shall not be applicable to

(i)  Garage and Automobile Policies issued by the Reassured on New York risks, or

(ii)  statutory liability insurance required under Chapter 90, General Laws of Massachusetts,
until 90 days following approval of the Broad Exclusion Provision by the Governmental Authority having jurisdiction thereof.

(4)  Without in any way restricting the operation of paragraph (1) of this Clause, it is understood and agreed that paragraphs (2) and (3) above are not applicable to original liability policies of the Reassured in Canada and that with respect to such policies this Clause shall be deemed to include the Nuclear Energy Liability Exclusion Provisions adopted by the Canadian Underwriters' Association or the Independent Insurers Conference of Canada.

---

*NOTE.  The words printed in italics in the Limited Exclusion Provision and in the Broad Exclusion Provision shall apply only in relation to original liability policies which include a Limited Exclusion Provision or a Broad Exclusion Provision containing those words.

NMA 1590
21/9/67