UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EAGLE STAR INSURANCE COMPANY LIMITED and HOME AND OVERSEAS INSURANCE COMPANY LIMITED,<br><br>                  Petitioner,<br><br>vs.<br><br>ARROWOOD INDEMNITY COMPANY, f/k/a ROYAL INDEMNITY COMPANY,<br><br>                  Respondent,<br><br>and<br><br>EMPLOYERS INSURANCE COMPANY OF WAUSAU, STRONGHOLD INSURANCE COMPANY LIMITED; ALLSTATE INSURANCE COMPANY; NATIONWIDE MUTUAL INSURANCE COMPANY; NATIONAL CASUALTY COMPANY,<br><br>                  Movant-Intervenors. | Civil Action No. 1:13-cv-3410-HB<br><br>**DECLARATION OF CAREY G. CHILD IN SUPPORT OF INTERVENORS' PETITION TO INTERVENE AND TO UNSEAL JUDICIAL DOCUMENTS** |

      I, CAREY G. CHILD, pursuant to 28 U.S.C. § 1746, declare that I have personal knowledge of the facts stated herein, and if called upon to do so, I could and would competently testify to the following:

      1.     I am an attorney representing one of the Intervenors herein, Stronghold Insurance Company Limited ("Stronghold"), and I am Senior Counsel at the law firm Chadbourne & Parke LLP, attorneys to Stronghold.

      2.     I make this declaration in support of the petition filed by Intervenors to intervene for the purpose of unsealing the arbitration award that resulted from a reinsurance arbitration (the

"Arrowood/Eagle Star Arbitration") between Arrowood Indemnity Company as successor to Royal Indemnity Company ("Arrowood") and Petitioners Eagle Star Insurance Company Limited and Home and Overseas Insurance Company Limited (collectively, "Eagle Star"). Although that arbitration award (the "Award") is the subject of this proceeding and of Eagle Star's petition to confirm the Award (the "Petition to Confirm"), it is currently under seal, apparently at the request of Arrowood and/or Eagle Star (collectively, the "Parties").

3. Arrowood has also commenced a separate reinsurance arbitration against Stronghold, and I represent Stronghold in that arbitration. I have represented parties to reinsurance arbitrations for more than 20 years, and base the statements set forth herein upon that knowledge of the reinsurance industry and reinsurance arbitrations, as well as upon reviewing the materials upon which Arrowood based its arbitration demand against Stronghold, and the materials and gathered by Stronghold to respond to that demand.

4. Reinsurance is a transaction by which an insurer (often referred to in the reinsurance context as the "cedent") transfers some or all of the risk under one or more of its insurance policies to another company (known as the "reinsurer"), in exchange for a share of the insurance premium. If the reinsurance contract covers a single specified policy, the reinsurance is known as "facultative" reinsurance. If the reinsurance contract covers an entire portfolio or group of the cedent's policies, it is known as "treaty" reinsurance and the contract is called a "reinsurance treaty." Often, several reinsurance treaties will provide layers of interlocking coverage, known as a reinsurance program.

5. Stronghold participated as a reinsurer on one such reinsurance program under which Arrowood (then Royal Indemnity Company) was the cedent. This reinsurance program was referred to by Arrowood as the "Global Slip" program. The separate reinsurance treaties that

each made up a layer of the Global Slip program were what are known in the reinsurance industry as "subscription" contracts. This means that multiple reinsurers (each a "subscribing reinsurer") participated on each contract / layer, each "subscribing" to the contract so that the total reinsurance obligations to the ceding company were split amongst the various subscribing reinsurers, one of which was Stronghold. Although each reinsurer's liabilities were separate, they all subscribed to the same contract wording for each layer.

6. Exhibit 1 to the Petition to Confirm is described therein as the reinsurance contract, covering the period from January 1, 1967 to December 31, 1967, that was the subject of the arbitration giving rise to the Award at issue in this proceeding. I recognize the Exhibit 1 to the Petition to Confirm as one of the reinsurance treaties making up the Global Slip program. Thus, upon information and belief, including based upon the foregoing, upon the Petition to Confirm, Exhibit 1 thereto, and upon the other declarations filed herewith, Eagle Star, and the other Intervenors were all fellow subscribing reinsurance along with Stronghold in the Arrowood Global Slip program.

7. In August 2011, Arrowood demanded arbitration against Stronghold seeking to collect on amounts that Arrowood claimed that Stronghold owed as a subscribing reinsurer under the Global Slip program. The amounts initially demanded by Arrowood were in respect of its purported payments to General Motors, Inc., but Arrowood has also placed Stronghold on notice regarding other claims including in respect of Anco Insulators and Graybar Electric, and Stronghold has counter demanded specifically adding those claims to the arbitration. This arbitration (the "Arrowood/Stronghold" arbitration) remains pending.

8. Upon information and belief, including based upon the Petition to Confirm, other public-record filings, and the other declarations filed herewith, Arrowood has commenced

separate arbitrations regarding the Global Slip program and one or more of the General Motors, Anco and Graybar claims against the other Intervenors, and against other subscribing reinsurers, including Eagle Star.

9. Stronghold believes that Arrowood's claims under the Global Slip program are inconsistent with the wording of the Global Slip program contracts, and are also internally inconsistent, both within claims, and across claims. As a result, the Arrowood/Stronghold arbitration will address, among other things, whether Arrowood properly ceded or billed Stronghold for the General Motors, Anco, and Graybar claims, among others, under the Global Slip. As such, it will address the same contract wording from the same reinsurance program, the same legal issues, and the same facts and underlying insurance claims, as did the arbitration and the Award at issue in this proceeding.

10. Stronghold became aware of the Petition to Confirm and the sealed Award on or about June 5th.

11. As a matter of reinsurance industry practice, reinsurance arbitrations are decided by a panel of three industry veterans. The determination of such a panel as to whether or not Arrowood has properly ceded the General Motors, Anco, and Graybar claims under the Global Slip program would be of substantial value to Stronghold, to other subscribing reinsurers, and to the industry as a whole. Unsealing the Award will allow all involved the opportunity to better assess the true value of the claims asserted by Arrowood, and will also provide a limited check on the Arrowood's efforts to commence serial arbitrations, including the possibility of inconsistencies among the treatment of subscribing reinsurers, and Arrowood adjusting its arguments in subsequent arbitrations based on outcomes that it has hidden from other subscribing reinsurers.

12. For the foregoing reasons, Stronghold joins in the present petition and supporting memorandum of law to intervene and to unseal the Award.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 27th day of June 2013 at Washington, D.C.

        /s/ Carey G. Child
Carey G. Child (D.C. Bar No. 437704)